[Crim. No. 1795. In Bank.—August 19, 1913.]

In the Matter of the Application of EMMA W. STOLTEN-BERG, on Habeas Corpus.

TENEMENT HOUSES—ACT OF 1911—DIFFERENT REGULATIONS AFFECTING EXISTING TENEMENTS AND THOSE TO BE BUILT—DISCRIMINATION JUSTIFIABLE.—The Tenement House Act of 1911 (Stats. 1911, p. 860), which makes detailed provisions regulating the mode of construction and occupation of all tenement houses, is not rendered invalid on account of unjustifiable discrimination, merely because it establishes, in certain respects, different regulations for existing tenement houses from those made applicable to buildings to be erected.

ID.—POLICE POWER—REGULATION OF CONSTRUCTION AND OCCUPATION OF BUILDINGS.—The legislature, in the exercise of the police power, has the right to regulate the manner of the construction and occupation of buildings, and particularly tenement houses, to the end of safeguarding the health of their occupants, and lessening the fire hazard.

ID.—CLASSIFICATION OF SUBJECTS OF REGULATION.—While constitutional provisions prohibit arbitrary discrimination in favor of or against

selected individuals or groups, it is within the legislative power to classify subjects of regulation and to pass laws applicable to all of a class, provided that the classification so made be founded upon some reasonable, intrinsic basis of differentiation.

ID.—VALIDITY OF CLASSIFICATION.—The question whether a classification of subjects for the exercise of the police power is proper is not to be determined upon any hard and fast rules, but must be answered after a consideration of the particular subject of litigation.

ID.—DIFFERENCE BETWEEN EXISTING TENEMENTS AND THOSE TO BE BUILT.—There is a substantial, inherent, logical difference between tenement houses already constructed and those to be built, and this difference is one that the legislature might fairly make the basis of the different treatment that it has accorded to the two classes by such act.

APPLICATION for a Writ of Habeas Corpus directed to the Chief of Police of the City of Los Angeles.

The facts are stated in the opinion of the court.

H. A. Massey, for Petitioner.

. Ray E. Nimmo, City Prosecutor, and D. R. Gardner, Assistant City Prosecutor, for Respondent.

SLOSS, J.—A writ of *habeas corpus* was issued on the petition of Emma W. Stoltenberg, who was held on a charge of violating a provision of the Tenement House Act of 1911. (Stats. 1911, p. 860.) The complaint against petitioner charged her with the violation of section 85 of the act. That section reads as follows: "No building hereafter constructed as or altered into a tenement house shall be occupied in whole or in part for human habitation until the issuance of a certificate by the health department, . . . that said building conforms in all respects to the requirements of this act relative to the light and ventilation and sanitation of tenement houses hereafter erected, . . . Such certificates shall be issued within ten days after written application therefor, if said building at the date of such application shall be entitled thereto."

The only contention of the petitioner is that the act is invalid because, as is claimed, it makes an unjustifiable discrimination between buildings erected as or altered into tenement

houses after the enactment of the law and buildings occupied as tenement houses theretofore. Of the right of the legislature, in the exercise of the police power, to regulate the manner of the construction and occupation of buildings, and particularly tenement houses, to the end of safeguarding the health of their occupants, and lessening the fire hazard, no question is now made, although the validity of the enactment seems to have been challenged on this ground also in the district court of appeal of the second appellate district, to which the petitioner first made application for release on *habeas corpus.* The opinion there filed (*In re Stoltenberg,* 21 Cal. App. 722, [132 Pac. 841], would be sufficient to dispose of this contention, if it had been here repeated.

The Tenement House Act of 1911 is an elaborate enactment of over one hundred sections, containing a number of detailed provisions regulating the mode of construction and occupation of tenement houses. Some of these provisions bear upon sanitary requirements, others have relation to protection against fire, while others, again, seem to be designed to promote the safety and welfare of occupants in other respects. Many of the restrictions, such as those defining the proportion of a lot that may be occupied by a tenement house, the height of such house, the size of yards and courts, location, and size of windows, size of rooms, and other matters, are expressly confined to tenement houses to be "hereafter erected." There are also certain restrictions specifically applicable to alterations in existing tenement houses. And, in addition, the act makes various requirements with respect to the equipment, maintenance, and conduct of existing tenement houses. For example, section 77 provides that no room in a tenement house erected prior to the passage of this act shall be occupied for living purposes unless it shall have one of a number of minutely described means of access to light and air. Section 78 provides for the lighting of halls, sections 79, 80, 81, and 82, for certain sanitary arrangements. In short, while the act does not apply precisely the same requirements to existing tenement houses that it applies to those to be erected, it does cover both classes, and provides definite regulations for each. Is there such an inherent difference between tenement houses already constructed and occupied and those not yet built as to justify the legislature in providing different rules for the

government of the two? It needs no argument, of course, to show that, while constitutional provisions prohibit arbitrary discrimination in favor of or against selected individuals or groups, it is within the legislative power to classify subjects of regulation and to pass laws applicable to all of a class (*In re Zhizhuzza,* 147 Cal. 328, [81 Pac. 955]), provided that the classification so made be founded upon some reasonable, intrinsic basis of differentiation.

The argument of petitioner is that there is no logical ground upon which it can be said that the occupation of tenement houses which do not, in their construction, comply with certain requirements, would be less dangerous to the public health, safety, or welfare if such houses existed prior to the passage of the act than it would be if the same kind of houses had been constructed or altered after the law had gone into effect. Three cases, decided in this state, are the authorities principally relied upon. In *Ex parte Bohen,* 115 Cal. 372, [36 L. R. A. 618, 47 Pac. 55], this court held that an ordinance prohibiting further purchases of cemetery lots within a city, as well as further interments, but permitting such interments in lots already purchased for the use of the owners or their families, was invalid as making an unjustifiable discrimination in favor of those who were owners of burial lots at the date of the passage of the ordinance. The same view was again declared, as one of the grounds of the decision, in *Los Angeles* v. *Hollywood Cem. Assoc.,* 124 Cal. 344, [71 Am. St. Rep. 75, 57 Pac. 153]. *In re Dondero,* 19 Cal. App. 66, [124 Pac. 884], was a case involving the validity of an ordinance prohibiting the construction and maintenance, after the adoption of the enactment, of buildings to be used as stables, without a permit from the board of supervisors and the board of health. The exemption of buildings already occupied as stables was held to be an arbitrary discrimination and to invalidate the ordinance. In each of these cases certain individuals were granted or permitted to retain, without restriction, privileges denied to others. Those owning lots were, in the Bohen case, allowed the absolute right to continue burials of members of their families. In the Dondero case, those already occupying stables were given the right, without any limitation, to continue such occupation, while others desiring to build or maintain stables thereafter, were subjected to restrictions. We

may well assume that the decisions invalidating these enactments were correct, without necessarily concluding that the distinction complained of, in the act before us, is without justification. In the first place, the question whether a classification of subjects for the exercise of the police power is proper is not to be determined upon any hard and fast rules, but must be answered after a consideration of the particular subject of litigation. In other words, each case must depend, to some extent, upon its own facts. There may be reasons authorizing a discrimination between tenements already occupied and those to be constructed, even though a discrimination between burial lots owned and those to be purchased, or between stables erected and to be erected, might not be proper. We are by no means prepared to hold that this act, even if it imposed no restrictions upon tenement houses occupied at the time the law went into effect, would for that reason alone be void. The legislature may well have believed that the danger to the public health and safety from tenements already existing was not so great as to make it necessary or proper, in the protection of the public, to impose upon owners the great burden of altering their buildings to comply with the requirements for new tenements, or, where such alteration was impossible, to destroy the buildings. A discrimination between buildings erected and those to be built has been recognized as proper in the enactment of laws limiting the height of buildings (Dillon on Municipal Corporations, sec. 696; *Welsh* v. *Swasey*, 193 Mass. 364, [118 Am. St. Rep. 523, 23 L. R. A. (N. S.) 1160, 79 N. E. 745]), or prohibiting the future construction of wooden buildings within certain boundaries. (*Wadleigh* v. *Gilman*, 12 Me. 403, [28 Am. Dec. 188]; *Corporation of Knoxville* v. *Bird*, 12 Lea (Tenn.), 121, [49 Am. Rep. 326]; *Klingler* v. *Backel*, 117 Pa. St. 326, [11 Atl. 555]; *King* v. *Davenport*, 98 Ill. 305, [38 Am. Rep. 89].) Such rulings must to some extent rest upon the view that the legislature may guard against the creation or extension of threatened evils without undertaking to wipe out every similar existing evil, where a more sweeping enactment would work undue hardship.

But, as we have already pointed out, the law before us does not exempt existing tenement houses from regulation. It subjects them to very strict regulation. The provisions are,

to be sure, different from those made applicable to buildings to be erected, but the differences are such as are incident to the nature of the case. In erecting a new building, it is a simple matter to conform, in height of structure, in extent of area of lot to be covered, in height of rooms, in dimensions of lightwells and courts, and in various other particulars, to the provisions of a law in force when the construction is commenced. It is, however, impossible or impracticable to make an existing building conform to such requirements. The various provisions of the act are but means to the ends of safeguarding life, health, and property. We cannot doubt that the legislature was acting within the legitimate scope of its discretion when it determined that a certain mode of construction, when applied to new buildings, would best attain those ends, while the same purposes could better be reached in the case of existing buildings by providing other regulations more appropriate to the situation of such buildings. In short, we are satisfied that there is a substantial, inherent, logical difference between tenement houses already constructed and those to be built, and that this difference was one that the legislature might fairly make the basis of the different treatment that it has accorded to the two classes.

It may be remarked that no particular point is made on the provision of section 85 requiring the issuance of a certificate before a new tenement may be occupied. The objection is to the different requirements regarding construction and equipment. So far as the certificate is concerned, the board of health has no discretion to grant or deny, but must issue it if the building in fact conforms to the requirements of the law. The only question, then, is whether these requirements are valid.

The writ is dismissed and the petitioner remanded.

Shaw, J., Angellotti, J., Lorigan, J., Melvin, J., and Henshaw, J., concurred.

Rehearing denied.