[L. A. No. 21652.   In Bank.   Nov. 1, 1950.]

JOHN C. HUNTER, Petitioner, v. JUSTICE'S COURT OF CENTINELA TOWNSHIP et al., Respondents; SHELL OIL COMPANY, Real Party in Interest.

Arthur C. Fisher and John C. Packard for Petitioner.

Harold Judson and Orris R. Hedges, Amici Curiae on behalf of Petitioner.

Fred N. Howser, Attorney General, and John F. Hassler, Deputy Attorney General, for Respondent.

O'Melveny & Myers, W. B. Carman, William W. Alsup, Deane F. Johnson, Robert T. Patton and Donald S. Coye for Real Party in Interest.

CARTER, J.—Petitioner seeks by prohibition to restrain respondent justice's court from proceeding to try him for vio-

lating sections 3600 and 3608 of the Public Resources Code. His motion in that court for dismissal on the same grounds now urged was denied, that is, that those sections violate the guarantees of due process and equal protection of the laws. (U.S. Const., 14th Amendment; Cal. Const., art. I, § 21, and art. IV, § 25(19).)

It appears that petitioner is the owner of two lots in a townsite which constitutes a residential area. The two lots consist of less than an acre in area. All of the property surrounding petitioner's lots is leased by the owners to Shell Oil Company, which is engaged in extracting oil therefrom. Before proceeding with drilling and production of oil from this area, the company filed pursuant to section 3608 of the Public Resources Code, *supra*, with the state oil supervisor a notice of intention to drill under its lease and the supervisor filed a declaration that petitioner's lots were deemed included in the company's lease. Thereafter petitioner's application for a permit to drill for oil on his lots was refused by the supervisor on the ground that they were included in the company's lease. Nevertheless, petitioner commenced drilling operations on his lots and the proceeding sought to be prohibited was commenced against him.

Section 3600 of the Public Resources Code establishes spacing requirements for drilling oil wells and declares that a well drilled in violation of it is a "public nuisance." It is conceded that petitioner cannot meet those requirements because of the small area of his lots, which brings into operation section 3608, reading: "Where land aggregating less than one acre is surrounded by other lands, which other lands are subject to an oil and gas lease aggregating one acre or more, and if, under provisions of Sections 3600 to 3607 . . . the drilling . . . of a well on said land is declared to be a public nuisance, said land shall, for oil and gas development purposes and to prevent waste and to protect the oil and gas rights of landowners, be deemed included in said oil and gas leasehold on said other lands when there is filed with the State Oil and Gas Supervisor a notice of intention to drill a well upon the said leasehold covering said other lands and the State Oil and Gas Supervisor has caused to be recorded with the county recorder of the county in which said land aggregating less than one acre is located a declaration as hereinafter provided.

". . . The owners of the oil and gas mineral rights in said land so deemed included in said oil and gas leasehold on said

other lands, as herein provided, shall thereafter receive in money, based upon the production of oil and gas from said leasehold including said land, a pro rata share of the landowners' royalty determined in accordance with the provisions of said oil and gas lease in the proportion that the area of said land bears to the aggregate of the total area covered by said oil and gas lease including the area of said land; provided further, that said owners of said oil and gas mineral rights in said land shall in no case receive less than their pro rata share determined, as herein provided, of the value of one-eighth part of the oil and gas produced, saved and sold from the operating unit comprising said leasehold on said other lands and said land, computed in accordance with the provisions of said oil and gas lease with respect to the computation of landowners' royalty; and provided further, that without the consent of said owners of said land the lessee or operator of said oil and gas leasehold shall have no right to use the surface of said land nor to use the subsurface thereof down to a depth of 200 feet below the surface thereof.''

Section 3608 was probably adopted in response to this court's decision in *Bernstein* v. *Bush,* 29 Cal.2d 773 [177 P.2d 913], where it was held that the spacing requirement (§ 3600) as applied to the owners of several small pieces of property was invalid for the reason that they were wholly deprived of the right to take oil from their land in that they could not drill an offset well on their land to prevent the draining of the underlying oil basin by wells on adjacent land and that ''where, . . . the law, in its application at least, does not afford adequate means of protection as a substitute for the right to drill an offset well'' it is invalidly applied. Thus we are not here concerned with the main holding in the Bernstein case, but accepting its premise we have the narrow question of whether, under facts now presented, § 3608, as applied to petitioner, gives him an ''adequate means of protection or substitute,'' for his right to extract oil from his property.

It is the settled rule that ''a state has constitutional power to regulate production of oil and gas so as to prevent waste and to secure equitable apportionment among landholders of the migratory gas and oil underlying their land, fairly distributing among them the costs of production and of the apportionment. *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U.S. 61, 77 [31 S.Ct. 337, 55 L.Ed. 369] ; *Bandini Petroleum Co.* v. *Superior Court,* 284 U.S. 8, 22 [52 S.Ct. 103, 76

L.Ed. 136, 78 A.L.R. 826]; *Champlin Refining Co.* v. *Corporation Commission,* 286 U.S. 210, 232-4 [52 S.Ct. 559, 76 L.Ed. 1062, 86 A.L.R. 403]; *Thompson* v. *Consolidated Gas Util. Corp.,* 300 U.S. 55, 76-7 [57 S.Ct. 364, 81 L.Ed. 510]; *Patterson* v. *Stanolind Oil & Gas Co.,* 305 U.S. 376, 379 [59 S.Ct. 259, 83 L.Ed. 231], and cases cited." (*Hunter Co.* v. *McHugh,* 320 U.S. 222, 227 [64 S.Ct. 19, 88 L.Ed. 5].) (See, also, *Bernstein* v. *Bush, supra; Patterson* v. *Stanolind Oil & Gas Co.,* 305 U.S. 376 [59 S.Ct. 259, 83 L.Ed. 231]; *People* v. *Associated Oil Co.,* 211 Cal. 93 [294 P. 717]; *Pacific Palisades Assn.* v. *City of Huntington Beach,* 196 Cal. 211 [237 P. 538, 40 A.L.R. 782]; *Bandini Petroleum Co.* v. *Superior Court,* 110 Cal.App. 123 [293 P. 899], affirmed, 284 U.S. 8 [52 S.Ct. 103, 76 L.Ed. 136]; *Marrs* v. *City of Oxford,* 32 F.2d 134, cert. denied, 280 U.S. 573 [50 S.Ct. 29, 74 L.Ed. 625].) In conformity with that principle it has been recognized that certain measures are proper, such as the regulation of the space between wells or limitation of area to each (see *Bernstein* v. *Bush, supra,* 777; *Burford* v. *Sun Oil Co.,* 319 U.S. 315 [63 S.Ct. 1098, 87 L.Ed. 1424]; *Oxford Oil Co.* v. *Atlantic Oil & Producing Co.,* 22 F.2d 597, cert. denied, 277 U.S. 585 [48 S.Ct. 433, 72 L.Ed. 1000]; *Marrs* v. *City of Oxford, supra; Brown* v. *Humble Oil & Refining Co.,* 126 Tex. 296 [83 S.W.2d 935, 99 A.L.R. 1107]; *Berline* v. *Waldschmidt,* 159 Kan. 585 [156 P.2d 865, 868]), and provisions for pooling of operations by the various owners in an oil field. (See *Hunter Co.* v. *McHugh, supra; Marrs* v. *City of Oxford, supra; Patterson* v. *Stanolind Oil & Gas Co., supra; Croxton* v. *State,* 186 Okla. 249 [97 P.2d 11].)

There is a strong presumption of the constitutionality of the legislation here involved (*Bernstein* v. *Bush, supra,* 777) and hence the question is whether the Legislature had any reasonable basis for determining that the substitute provided for in section 3608 for the right to extract oil, was adequate. We believe the Legislature acted within constitutional bounds in enacting section 3608. It was not unreasonable for it to have concluded that self-interest would dictate that the owners of surrounding lands would obtain a lease with the best terms obtainable on the market and hence the owner of a small parcel would be as well off as if he acted on his own behalf. It went further than that however. It guaranteed to such owner the most important part of the lease—his share of a minimum royalty of one eighth. It may have reasonably determined that such royalty was the fraction commonly and

usually given by lessees to lessors in oil leases. He is given a share of such royalty proportioned on the relation of the area of his land as to all the land. The surface of his land and 200 feet below cannot be invaded, which may leave him in a somewhat better position than that of his neighbors who made the lease. It is true that many states have set up a regulatory body which determines where the wells may be drilled and how the amount of the oil produced and expenses incurred are to be divided and borne by the consenting and nonconsenting owners of land in a pooling or unit development of an oil field. That may be a more satisfactory method, but that is a matter for legislative decision. "The Federal Constitution does not invalidate state legislation because it fails to embody the highest wisdom or provide the best conceivable remedies." (*Cohen* v. *Beneficial Ind. Loan Corp.*, 337 U.S. 541, 550 [69 S.Ct. 1221, 93 L.Ed. 1528].) Unless we can say that the method fixed by section 3608 is an arbitrary and unreasonable method of achieving conservation of oil and equal protection of the several owners' right to extract it, the legislation cannot be declared invalid.

Analogous legislation has been upheld. In *Marrs* v. *City of Oxford, supra,* a city ordinance provided that only one oil well could be drilled in a city block. A permit to drill would be granted to the holder of the greater area of ground in the block. The other owners would receive a share of one eighth of the oil produced apportioned on the basis of the proportion the area of their land bore to the whole block. While the court emphasized the fire and other hazards encountered in drilling and operating wells in a city it also said: "But looking to the substance of things, as equity does, what are the rights of plaintiffs that will be encroached upon or denied to them by the enforcement of this ordinance? It is not the mere right to drill a well on one or two lots at great cost and stop with that, or to take the proportionate part of the oil and gas in the pool that might be said to lie under or be fairly attributed to those lots. The obvious purpose was to reach the pool as quickly as possible and take all of the oil and gas obtainable before others could get it, thus seriously encroaching upon and destroying the same rights of adjoining lot owners. If one or more lot owners have given a lease for which no permit is obtainable their lessee may join a lessee who has a permit in the same block on terms that are fair to both lessor and lessee. If a lot owner has not given a lease he is protected by the asking in a

fair proportion of the mineral produced by a permittee. The regulations make every effort to protect, rather than to destroy rights. They extend equal opportunity to all who have an interest and eliminate the race between those having equal rights in a common source of wealth, so that some may not take all and leave others with nothing. Under the law in Kansas there is no property in oil and gas, because of their migratory nature, until they have been captured, though each surface owner may take without limit, unless lawfully restrained. *Phillips* v. *Springfield Crude Oil Co.*, 76 Kan. 783 [92 P. 1119]; *National Supply Co.* v. *McLeod*, 116 Kan. 477 [227 P. 350]. This is the rule also in Pennsylvania and Indiana. The nature of this right was fully discussed and defined in *Ohio Oil Co.* v. *Indiana*, 177 U.S. 190 [20 S.Ct. 576, 44 L.Ed. 729]. The court in that case, after accepting the general practice as a settled principle, that every owner of the surface within a gas or oil field might prosecute his efforts and reduce to his possession if possible all of the deposits without violating the rights of other surface owners, in the absence of regulations to the contrary, said:

" 'But there is a co-equal right in them all to take from a common source of supply, the two substances which in the nature of things are united, though separate. It follows from the essence of their right and from the situation of the things, as to which it can be exerted, that the use by one of his power to seek to convert a part of the common fund to actual possession may result in an undue proportion being attributed to one of the possessors of the right, to the detriment of the others, or by waste by one or more, to the annihilation of the rights of the remainder. Hence it is that the legislative power, from the peculiar nature of the right and the objects upon which it is to be exerted, can be manifested for the purpose of protecting all the collective owners, by securing a just distribution, to arise from the enjoyment by them, of their privilege to reduce to possession, and to reach the like end by preventing waste.' " (See, also, *Adkins* v. *City of West Frankfort*, 51 F.Supp. 532; *Tysco Oil Co.* v. *Railroad Commission of Texas*, 12 F.Supp. 195; *Tysco Oil Co.* v. *Railroad Commission of Texas*, 12 F.Supp. 202.)

It is asserted that the provisions of the oil spacing law making it inapplicable to fields producing on August 14, 1931 (Pub. Resources Code, § 3605), is invalidly discriminatory. That exemption was made when the spacing law was first enacted in 1931 (Stats. 1931, p. 1277, § 1), and provided that

producing fields on the date the act became effective (August 14, 1931) were not included. One manifest reason for the exemption was the belief that hardship and enforcement difficulties might flow from its application to existing fields. Wells already established and producing are in a different category, for money has been expended for their development and erection. It is said in *People* v. *Western Fruit Growers,* 22 Cal.2d 494, 508 [140 P.2d 13]: "The Legislature, in adopting a policy, may adapt legislation to an existing situation. It is upon this basis that the exemption of existing structures from zoning ordinances has been held valid (*City of Aurora* v. *Burns,* 319 Ill. 84 [149 N.E. 784]; *City of Norton* v. *Hutson,* 142 Kan. 305 [46 P.2d 630]), and regulations governing the construction and occupation of certain types of existing buildings different from those required for structures to be erected have been upheld (*Matter of Stoltenberg, supra* [165 Cal. 789 (134 P. 971)]). For the same reason, courts have sustained the grant of a preferred position to prior applicants for certificates of convenience and necessity to operate motor vehicles over a given route. (*Bradley* v. *Public Utilities Commission of Ohio,* 289 U.S. 92 [53 S.Ct. 577, 77 L.Ed. 1053, 85 A.L.R. 1131].) Similarly, laws amending vocational and professional standards may provide for the continuance of licenses issued prior to the amendment. (*Ex parte Whitley,* 144 Cal. 167, 171 [77 P. 879, 1 Ann.Cas. 13]; *Bohannon* v. *Board of Medical Examiners,* 24 Cal.App. 215 [140 P. 1089]; *People* v. *Walsh,* 346 Ill. 52 [178 N.E. 343]; *Gerard* v. *Smith* (Tex. Civ.App.), 52 S.W.2d 347.) And this court has sustained the validity of an amendment to section 4463 of the Political Code by which the Legislature changed the requirements necessary for a newspaper to be one of general circulation, exempting from the new requirement existing newspapers of general publication as they were defined by the prior statute. (*In re Byers,* 219 Cal. 446 [27 P.2d 641].)"

Petitioner advances arguments that are not applicable to the statute as applied to him here such as: That an owner of a below minimum parcel of property cannot drill until his neighbors or their lessees choose to drill, thus postponing realization by him of the oil produced from his property; that under section 3608 an owner of such property cannot receive anything from wells drilled on adjoining land unless he is "surrounded" by land under an oil lease or leases; that if

he is surrounded by several leases he must take the one having the longest common boundary with him and that such lease may be at the edge of the oil field and the land unproductive; and that the exemption of a field producing in 1931, is uncertain because it is difficult to ascertain what is embraced in an oil "field." Those are all supposititious cases with which we are not presently concerned. Petitioner alleges that Shell Oil Company has a lease upon land "adjacent" to or in "proximity" with his property, and it appears from the company's return to the petition herein that it has a "community" lease on all the lands surrounding petitioner's property and there appears to be no dispute about it. There is no question of being placed under the lease having the longest common boundary. The wells drilled under the lease are producing as in *Bernstein* v. *Bush, supra,* and we here decide that section 3608 is not invalid as applied to petitioner under the circumstances presented. We said in that case (p. 777) : "The face of the legislation may appear to be valid, and insofar as it can be complied with and applied without a denial of constitutional rights it will be held to be proper and lawful legislation. But a statute, innocuous and valid on its face, may become invalid in its application, in which event it is proper for the petitioner to show the facts by which he contends that as to him the law is unreasonable, oppressive and void. (*In re Smith,* 143 Cal. 368, 370 [77 P. 180].) . . . In *Skalko* v. *City of Sunnyvale,* 14 Cal.2d 213, 216 [93 P.2d 93], this court recognized that a police regulation, valid when adopted, might become invalid in its operation in particular instances. The same principle was stated in *Bandini Petroleum Co.* v. *Superior Court,* 284 U.S. 8, 22 [52 S.Ct. 103, 76 L.Ed. 136, 78 A.L.R. 826], where the Supreme Court upheld a California statute regulating the exercise of the correlative rights of surface owners with respect to a common source of supply of oil and gas as 'valid upon its face, that is, considered apart from any attempted application of it in administration which might violate constitutional rights.' "

Moreover, there is a valid distinction between small acreage surrounded by leased property and that which is not, for in the former there is a development of the field and the small owner may be placed under such development, whereas, greater difficulties would be encountered where the surrounding land was held by various owners or lessees in apportioning the fruits of production. It is to be remembered that the Legislature is not required by the equal protection right to

make provision for all evils arising from certain conditions. As said in *Railway Express Agency* v. *New York*, 336 U.S. 106, 110 [69 S.Ct. 463, 93 L.Ed. 533] : "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all."

█ Prohibition is the proper remedy for a review of the issues presented in the instant case. (*Rescue Army* v. *Municipal Court*, 28 Cal.2d 460 [171 P.2d 8].) No appeal may be taken by petitioner from the denial of petitioner's motion in the justice's court to dismiss the proceeding. (Pen. Code, § 1466(2) ; see *People* v. *Bentson*, 132 Cal.App. 295 [22 P.2d 734] ; 8 Cal.Jur. 492-3; 4 Cal.Jur. 10-Yr. Supp. (1943 Rev.) 901-2.) Hence he has no adequate remedy, for where "The order refusing to dismiss the action was not appealable, and to compel petitioner to submit to an unwarranted retrial of the cause, and then appeal from the judgment if adverse to it, would not afford speedy or adequate relief." (*Tomales Bay etc. Corp.* v. *Superior Court*, 35 Cal.2d 389, 392 [217 P.2d 968].)

In view of our holding that the statute here involved, as applied to petitioner's property, is valid and enforceable, the writ of prohibition here applied for must be denied, and it is so ordered.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

Petitioner's application for a rehearing was denied November 30, 1950.