[L. A. No. 25997.   In Bank.   Aug. 31, 1961.]

MARY V. LeBARD, Plaintiff and Appellant, v. RICHFIELD OIL CORPORATION et al., Defendants and Respondents.

533

Joseph R. Grillo for Plaintiff and Appellant.

William E. Woodroof and William D. Foote for Defendants and Respondents.

TRAYNOR, J.—In 1955 plaintiff owned less than one acre of land that was surrounded by other lands subject to an oil and gas lease held by defendant Richfield Oil Corporation as lessee. Richfield recorded a declaration of pooling individual oil and gas leases held by it in the vicinity into Operating Unit A and filed a notice of intention to drill on the land surrounding plaintiff's land. On March 14, 1955, pursuant to section 3608 of the Public Resources Code, the State Oil and Gas Supervisor recorded a declaration that plaintiff's land was deemed to be included in Richfield's Operating Unit A. On March 18, 1955, plaintiff sold and conveyed her land to defendants Kalmikov, and on May 12, 1955, the Kal-

mikovs sold and conveyed the land to defendants Flores but reserved to themselves ''all oil, gas, mineral and any other kindred substances in, on or under said land but without right of surface entry to said property.''

In 1955 section 3608 of the Public Resources Code provided:[1]

''Where land aggregating less than one acre is surrounded by other lands, which other lands are subject to an oil and gas lease aggregating one acre or more, and if, under the provisions of Sections 3600 to 3607, inclusive, of the Public Resources Code, the drilling or producing of a well on said land is declared to be a public nuisance, said land shall, for oil and gas development purposes and to prevent waste and to protect the oil and gas rights of landowners, be deemed included in said oil and gas leasehold on said other lands when there is filed with the State Oil and Gas Supervisor a notice of intention to drill a well upon the said leasehold covering said other lands and the State Oil and Gas Supervisor has caused to be recorded with the county recorder of the county in which said land aggregating less than one acre is located a declaration as hereinafter provided. . . .

''The owners of the oil and gas mineral rights in said land so deemed included in said oil and gas leasehold on said other lands, as herein provided, shall thereafter receive in money, based upon the production of oil and gas from said leasehold including said land, a pro rata share of the landowners' royalty determined in accordance with the provisions of said oil and gas lease in the proportion that the area of said land bears to the aggregate of the total area covered by said oil and gas lease including the area of said land; provided further, that said owners of said oil and gas mineral rights in said land shall in no case receive less than their pro rata share determined, as herein provided, on the value of one-eighth part of the oil and gas produced . . . ; and provided further, that without the consent of said owners of said land the lessee or operator of said oil and gas leasehold shall have no right to use the surface of said land nor to use the subsurface thereof down to a depth of 200 feet below the surface thereof. . . .''

Plaintiff brought this action to establish her right to royalties accruing pursuant to this section. The Flores defaulted and Richfield and the Kalmikovs demurred to the complaint. Their demurrers were sustained without leave to amend and judgment was entered for them. Plaintiff appeals.

[1]Section 3608 was amended in 1957 in respects not material to this action.

Plaintiff contends that the ''owners of the oil and gas mineral rights in said land so deemed included in said oil and gas leasehold'' to whom the royalties are payable are the owner or owners of those rights at the time the land is deemed to be included; not the owner or owners at the times thereafter when royalties are payable. She therefore concludes that the right to receive royalties pursuant to section 3608 is not appurtenant to the land deemed included in the lease and did not pass to the Kalmikovs when she conveyed the land to them.

Defendants contend that the owners referred to are the owner or owners at the time royalties are payable and that therefore the right to royalties created by section 3608 is appurtenant to the oil and gas rights in the included land and passes with a conveyance of that land unless the oil and gas rights or the right created by section 3608 are reserved.

██ We agree with defendants' contention. The statute provides, not that the owners of the oil and gas mineral rights at the time the land is deemed included shall receive the royalties, but that after that time the owners of those rights shall receive the royalties. Since the statute contemplates a continuing relationship between the owners of those rights and the lessee, it reasonably follows that it is the current owners who are to be paid.

This conclusion is supported by the legislative history of section 3608. In *Hunter* v. *Justice's Court*, 36 Cal.2d 315, 317 [223 P.2d 465], we pointed out that ''Section 3608 was probably adopted in response to this court's decision in *Bernstein* v. *Bush*, 29 Cal.2d 773 [177 P.2d 913], where it was held that the spacing requirement (§ 3600) as applied to the owners of several small pieces of property was invalid for the reason that they were wholly deprived of the right to take oil from their land in that they could not drill an offset well on their land to prevent the draining of the underlying oil basin by wells on adjacent land and that 'where, . . . the law, in its application at least, does not afford adequate means of protection as a substitute for the right to drill an offset well' it is invalidly applied.'' ██ We sustained the validity of section 3608 in the *Hunter* case and held that it gave the petitioner therein ''an 'adequate means of protection or substitute,' for his right to extract oil from his property.'' That right belongs to the owner of the land and passes with a conveyance of the land unless it is severed by a reservation or has been severed by a prior grant. To be effective, a substitute for

that right must necessarily inure to its owner. Section 3608 provides that it does so inure, and it in no way purports to sever the right to receive royalties from the ownership of the oil and gas mineral rights for the duration of the lease in which the land is deemed included.

■ Plaintiff contends, however, that section 3608 in effect made her a community lessor with Richfield's other lessors when her land was deemed included in Operating Unit A and that therefore the rules governing community oil leases are applicable. Those rules were stated in *Tanner* v. *Title Insurance & Trust Co.*, 20 Cal.2d 814, 820 [129 P.2d 383], as follows:

"By executing the community lease, the respondents and each of the other lessors assigned or conveyed to his colessors a percentage interest in all oil produced on his land by the lessee during the continuance of the lease. The consideration for that transfer was the similar mutual assignments of the other lessors. The royalty interest thus transferred by each landowner to his colessors is an incorporeal hereditament in gross (*Callahan* v. *Martin, supra* [3 Cal.2d 110 (43 P.2d 788, 101 A.L.R. 871)]) and the grantee's interest in the oil produced upon the property of one of the colessors is entirely separate and distinct from the royalty interest retained by him in oil which might be produced from his own premises. The only connection between the two interests is that the prorata assignment by one of the lessors of the royalty from his land is the consideration for the conveyance of the other lessors to him.

"Although the cases clearly establish that the percentage of the royalty reserved by a lessor in oil produced from his land passes to a grantee of the fee as an incident of the conveyance (see cases collected in note 94 A.L.R. 660), except as such rights are reserved by the deed, the incorporeal hereditament owned by the grantor in the oil produced from the land of the colessors, existing in gross, obviously does not follow the conveyance of the lessor's land, but can only be conveyed by a specific transfer of that interest."

It is immediately apparent that the rules stated with respect to a community oil lease of the kind that was before the court in the *Tanner* case do not fit the pattern established by section 3608 for compensating owners who have been deprived of the right to recover oil and gas from their lands. Thus, the *Tanner* rules are based on the existence of cross-conveyances. Section 3608 makes no provision for cross-conveyances. ■ The *Tanner* rules require segregating the

oil and gas produced from each parcel included in the lease, for the lessor's royalty from oil and gas produced from his own land is appurtenant whereas his royalty from oil and gas produced from the land of his colessors is in gross. Section 3608 makes no provision for segregating production according to its source and dividing the specified payments on that basis between the current owner of the land deemed included and the owner of that land at the time that it was deemed included. Instead, it ties the right to payments to the ownership of the oil and gas mineral rights in the land and makes clear that the entire payments are appurtenant to those rights.

If community leases of the kind considered in *Tanner* represented the exclusive or even preponderant method of developing oil lands owned by many persons, there might be reason to interpret section 3608 to fit the pattern of the *Tanner* rules, although to do so would compel implying legislative purpose and provision not readily apparent from the language of the statute. ▮▮▮ Community leases are only one method for achieving common oil development, however, and agreements for the pooling of individual leases, as in this case, and other forms of unit operation are not uncommon. Whether in any given agreement for unit development, the *Tanner* rules will be applicable between the parties will depend on the terms of the agreement. Moreover, it would not be unreasonable for the parties to provide that all of the royalties payable to an individual lessor pursuant to unit operation should be appurtenant to his land to avoid the problem of apportionment that arises under the *Tanner* rules in the event of a sale without a reservation of the mineral rights or an assignment of the royalties held in gross. Richfield contends that the pooling provisions of the individual leases it has pooled into Operating Unit A in this case do so provide and urges that we so hold. We are here concerned, however, with the rights provided by section 3608; not with the rights of the parties who voluntarily entered leases with Richfield. It would be inappropriate to pass on their rights in their absence. It is sufficient to note that the *Tanner* rules may or may not apply among the actual parties to a lease in which land is deemed included pursuant to section 3608 and that there is therefore no basis for assuming that those rules are implicit in the statute.

Plaintiff's right to receive the payments provided by section 3608 terminated when she transferred her land without reserving the oil and gas mineral rights therein, and since she

has not alleged that any royalties accrued before that transfer, her complaint does not state a cause of action.

The judgment is affirmed.

Gibson, C. J., Schauer, J., Peters, J., White, J., and Dooling, J., concurred.

McCOMB, J.—I dissent. I would reverse the judgment for the reasons expressed by Mr. Justice Ashburn in the dissenting opinion prepared by him for the District Court of Appeal in *LeBard* v. *Richfield Oil Corp.* (Cal.App.), 12 Cal. Rptr. 288.