[S.F. No. 22774. In Bank. May 17, 1971.]

PAUL DILLON et al., Petitioners, v.
THE MUNICIPAL COURT FOR THE MONTEREY-CARMEL
JUDICIAL DISTRICT OF MONTEREY COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

862

## COUNSEL

Paul N. Halvonik, Charles C. Marson, Herbert A. Schwartz, Richard Barelli, Raymond Shonholtz and Steve Slatkow for Petitioners.

No appearance for Respondent.

Donald H. Smith and Saul M. Weingarten, City Attorneys, and Robert T. Anderson for Real Party in Interest.

## OPINION

**SULLIVAN, J.**—Petitioners[1] seek a writ of prohibition restraining respondent court from taking further proceedings in a criminal action charging them with a violation of section 9-108 of the Municipal Code of the City of Seaside (City). The ordinance prohibits parades or civic demonstrations obstructing the free use of streets and sidewalks without first obtaining a permit from the City.[2] We issued an alternative writ of prohibition. Alleging that it has been designated real party in interest under the name of the "People of the State of California," the City has made a return thereto by verified answer. (Code Civ. Proc., §§ 1089, 1105; Cal. Rules of Court, rule 56(c).)

The petition alleges in substance the following facts. In 1970, the traditional Independence Day parade in the City of Seaside was held on Sunday, July 5. It was organized by the Seaside Chamber of Commerce (Chamber), a body designated by the City as its official agency for the collection and distribution of information regarding businesses, public facilities, and civic and recreational activities and opportunities. The Chamber receives from the City approximately $10,500 per year and

---

[1]Petitioners are: Paul Dillon, Kathy Harlow, Louise James, Steven Murtagh, Lawrence Hornbeck, Larry Waterhouse, Karel Sherwood Pearson, Steven Coyle, Raymond Shonholtz, John Hughes, Toni Minerva, Jack Dockstader, Robert Adams, Steve Slatkow, Kenneth Dursa, Bruce Neuberger, Carlo Eisenberg, Arlene Rosenberg, Robert Mandel.

[2]Section 9-108 provides:

"(a) It shall be unlawful for any person to obstruct the free use of any street or sidewalk.

"(b) Exceptions—Parades and/or civic demonstrations which obstruct the free use of the public streets and/or sidewalks may be permitted provided the following conditions are met:

(1) The applicant shall submit an application stating the name of the applicant, the date and time on which the public street or highway will be used and the nature of the activity proposed.

(2) Such application shall be accompanied by a fee of $5.00 which shall not be returnable.

(3) The application shall be filed with the City not less than 14 days prior to the activity.

(4) In the event of a parade or moving demonstration, the application shall include a detailed statement of the routes to be traveled including all streets.

(5) The application shall be submitted to the Police Department and the Fire Department for their approval. In the event that the anticipated crowds at such activities will reasonably require the use of extra police officers and/or firemen, the cost of hiring such persons shall be at the expense of the person or group applying for the permit. Payment shall be at the established rate of pay and a deposit covering such expenses shall be made to the City not less than seven days prior to the activity.

"(c) Appeals.

In the event that the application detailed in Section 9-108(b) is acted upon unfavorably, the applicant shall have the right to appeal to the City Council."

spends approximately $6,000 of that money each year on the Independence Day parade and related activities.

Pursuant to section 9-108 of the Seaside Municipal Code (see fn. 2, *ante*), the City issued to the Chamber a parade permit for July 5, 1970, and delegated to that body the task of issuing permits to groups participating in the parade. Approximately 180 organizations of various types, including other cities, ethnic groups, high schools, military organizations, the American Legion, the Veterans of Foreign Wars, and horsemen's associations were given permission by the Chamber to march in the parade.

Five groups, "dedicated to the active pursuit of peace through political process"[3] filed timely applications for permission to march in the parade.[4] On June 30, 1970, the Chamber informed counsel for the "peace groups" that two of the organizations would be permitted to be in the parade and that they had been assigned certain positions and starting times. Three days later, however, the Chamber notified the groups that none of them would be permitted to participate.

Despite the Chamber's refusal, it is alleged, petitioners, who are members of the five "peace groups," and between thirty and eighty other persons marched for two or three blocks along the parade route following the last official unit of the parade. The march was peaceful except for a brief scuffle which occurred when a few members of the last official unit of the parade attempted to wrest a banner from petitioners.

The police took no action during the parade except to take motion pictures of the unauthorized portion of the parade. On July 16, 1970, petitioners attended the Seaside City Council meeting to protest the treatment which had been given their applications to join the parade. At that time they were cited for violation of section 9-108 of the Seaside Municipal Code. No other unauthorized "marchers" were arrested or cited.

On July 27, 1970, a complaint was filed in respondent court charging petitioners with violating section 9-108 by obstructing the free use of one of the streets on the parade route. On July 29, 1970, petitioners filed a demurrer to the complaint asserting that section 9-108 is an unlawful prior restraint on the exercise of First and Fourteenth Amendment rights, that it is unconstitutionally vague and overbroad, and that it violates equal protec-

---

[3]The five groups named in the petition were the Women's International League for Peace and Freedom, Veterans for Peace, a group of members of the Peace and Freedom Party, a group from Monterey Peninsula College known as the MPC Committee for Peace, and the Movement for a Democratic Military.

[4]The petition alleges that the applications were made to the Seaside Chamber of Commerce, not to the City itself.

tion. Respondent court overruled the demurer, whereupon petitioners filed the instant petition for a writ of prohibition.

The City's return to the alternative writ admits that the parade was held, that the Chamber had applied for and obtained a parade permit, that section 9-108 governs the legality of holding parades in the streets of Seaside, that petitioners had expressed to the Seaside City Council certain grievances concerning the treatment of peace groups during the parade, and that petitioners were cited for and charged with a violation of section 9-108. The City generally denies either positively or for lack of sufficient information or belief the remaining allegations of the petition. Specifically, the City denies that there was an agency relationship between it and the Chamber and denies that it delegated to the Chamber organizational and promotional responsibility for the parade. The City also alleges that petitioners never applied to *it* for a parade permit as required by section 9-108.

From these pleadings, the following undisputed facts emerge. The City of Seaside has adopted section 9-108 of its Municipal Code to govern parades on its streets. On July 5, 1970, the Chamber held the traditional Independence Day parade pursuant to a permit issued to it by the City under the provisions of section 9-108. Petitioners were cited for having violated section 9-108 on the day of the parade and a complaint was filed in respondent court charging that petitioners had violated section 9-108 by obstructing the free use of a specified street on the parade route.

The remaining facts stated in the petition have been placed in issue by the return but the resolution of these factual disputes is not essential to a disposition of the matter before us.[5] Petitioners' crucial contention is that respondent court lacks jurisdiction over the proceedings pending before it because section 9-108 is unconstitutional *on its face,* violating the First and Fourteenth Amendments of the United States Constitution. Such a challenge is directed solely to the language of the enactment and not to its application in the particular case. Accordingly, we are not called upon to resolve the

---

[5]Petitioners argue that we should accept the facts alleged in the verified petition as true on the theory that the City's denial upon information and belief, or for lack of information or belief, is ineffective and is an admission of any fact presumably within the knowledge of the City. (*Dietlin* v. *General American Life Ins. Co.* (1935) 4 Cal.2d 336, 349 [49 P.2d 590]; *Dobbins* v. *Hardister* (1966) 242 Cal.App.2d 787, 791 [51 Cal.Rptr. 866].) Most of the allegations denied on this basis concern activities of the Seaside Chamber of Commerce, and the peace groups, or events occurring during the parade. Petitioners contend that the City has constructive knowledge of these facts because the Chamber, its alleged agent, has actual knowledge of them. However, the City has, by positive denial, not based upon information and belief, controverted petitioners' allegation that the Chamber was its agent. While the City has admitted that it subsidizes the Chamber, the subsidy alone does not make the Chamber its agent. It does not appear that the City has any actual knowledge of the facts which it has denied upon information and belief.

facts disputed by the parties. (See *Moore* v. *Municipal Court* (1959) 170 Cal.App.2d 548, 553 [339 P.2d 196].)

We do not consider issues which might have been raised had the Chamber's alleged role as the City's agent been an undisputed fact. Nor are we concerned with the asserted right of a group holding a permit to manage its own parade or the alleged right of the licensing authority to deny a permit to avoid conflicts between parades. The sole issue before us is whether section 9-108 is unconstitutional on its face.

Petitioners contend that the City's ordinance (see fn. 2, *ante*) is an unconstitutional prior restraint on First Amendment rights because it is a licensing scheme totally devoid of narrow, definite and objective standards.[6] Recently, in *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684 [68 Cal.Rptr. 721, 441 P.2d 281], we were presented with a similar contention involving a statute requiring the licensing of motion picture theaters. We there observed that the "crucial factor" in any determination of the validity of an ordinance imposing prior restraints on speech "is our zealous solicitude for rights falling within the protection of the First Amendment. In considering the constitutionality of ordinances in the category of that involved here ' "precision of regulation must be the touchstone." ' (*Interstate Circuit, Inc.* v. *City of Dallas* (1968) 390 U.S. 676, [6]82 [20 L.Ed.2d 225, 231, 88 S.Ct. 1298]) and the standards set forth therein must be 'susceptible of objective measurement' (*Keyishian* v. *Board of Regents* (1967) 385 U.S. 589, 603-604 [17 L.Ed.2d 629, 640-641, 87 S.Ct. 675]). Such precision is exacted because the 'threat of sanctions may deter almost as potently as the actual application of sanctions.' (*N.A.A.C.P.* v. *Button* (1963) 371 U.S. 415, 433 [9 L.Ed.2d 405, 418, 83 S.Ct. 328].) A long line of decisions has held unconstitutional ordinances governing the issuance of licenses

---

[6]Although the City has not raised these issues, we note (1) that a petition for a writ of prohibition is a proper procedural means by which to challenge as unconstitutional on its face a statute or ordinance under which criminal charges are being prosecuted. (*Whitney* v. *Municipal Court* (1962) 58 Cal.2d 907, 911 [27 Cal.Rptr. 16, 377 P.2d 80]; *Hunter* v. *Justice's Court* (1950) 36 Cal.2d 315, 323 [223 P.2d 465]; *Rescue Army* v. *Municipal Court* (1946) 28 Cal.2d 460, 462-467 [171 P.2d 8], app. dism. (1947) 331 U.S. 549 [91 L.Ed. 1666, 67 S.Ct. 1409]; 3 Witkin, Cal. Procedure (1954) Extraordinary Writs, § 37, pp. 2513-2515) and (2) that petitioners have standing to challenge the constitutionality of section 9-108 even though they did not apply for a permit under that ordinance. (*Freedman* v. *Maryland* (1965) 380 U.S. 51, 56 [13 L.Ed.2d 649, 653, 85 S.Ct. 734]; *Shuttlesworth* v. *Birmingham* (1969) 394 U.S. 147, 151 [22 L.Ed.2d 162, 167, 89 S.Ct. 935]; *Staub* v. *City of Baxley* (1958) 355 U.S. 313, 319 [2 L.Ed.2d 302, 309, 78 S.Ct. 277]; *Jones* v. *Opelika* (1942) 316 U.S. 584, 602 [86 L.Ed. 1691, 1704, 62 S.Ct. 1231] (Stone, C. J., dissenting) vacated and previous dissenting opinions adopted per curiam (1943) 319 U.S. 103 [87 L.Ed. 1290, 63 S.Ct. 890]; *Thornhill* v. *Alabama* (1940) 310 U.S. 88, 97 [84 L.Ed. 1093, 1099, 60 S.Ct. 736]; *Lovell* v. *Griffin* (1938) 303 U.S. 444, 452-453 [82 L.Ed. 949, 954, 58 S.Ct. 666]; *Smith* v. *Cahoon* (1931) 283 U.S. 553, 562 [75 L.Ed. 1264, 1271-1272, 51 S.Ct. 582]; *Burton* v. *Municipal Court, supra,* 68 Cal.2d 684, 688-689.)

to conduct First Amendment activities where administrative officials were granted excessive discretion in determining whether to grant or deny the license. [Par.] . . . *A fortiori* an ordinance is unconstitutional if no standards whatever are set forth to circumscribe the discretion of officials in granting or denying licenses. [Citations.]" (*Burton* v. *Municipal Court, supra,* 68 Cal.2d 684, 690-692.)

In *Shuttlesworth* v. *Birmingham, supra,* 394 U.S. 147, the Supreme Court of the United States reversed a conviction under a city ordinance declaring it unlawful to organize, hold or participate in "any parade or procession or other public demonstration on the streets or other public ways of the city" (*id.* at p. 149 [22 L.Ed.2d at p. 166]) without first obtaining a permit from the city commission. The ordinance provided that the commission "shall grant a written permit . . . unless in its judgment the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be refused." (*Id.* at pp. 149-150 [22 L.Ed.2d at p. 166].)

The high court, observing that the ordinance as written conferred on the commission "virtually unbridled and absolute power to prohibit" a parade or public demonstration, concluded that established constitutional principles forbade its enforcement. "This ordinance as it was written, therefore, fell squarely within the ambit of the many decisions of this Court over the last 30 years, holding that a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." (Fn. omitted.) (*Shuttlesworth* v. *Birmingham, supra,* 394 U.S. at pp. 150-151 [22 L.Ed.2d at p. 167].)

It will be helpful to our resolution of the question now before us to consider a few pertinent cases in the long and firmly established line of decisions to which the court had reference. In *Hague* v. *C.I.O.* (1939) 307 U.S. 496, 516 [83 L.Ed. 1423, 1437, 59 S.Ct. 954], the Supreme Court invalidated an ordinance which forbade all parades or public assemblies except upon permits issued by the city director of public safety. There the director was authorized to refuse permits as he thought proper in order to prevent " 'riots, disturbances or disorderly assemblage.' " Justice Roberts concluded that the provision was unconstitutional. "It can thus, as the record discloses, be made the instrument of arbitrary suppression of free expression of views on national affairs, for the prohibition of all speaking will undoubtedly 'prevent' such eventualities." (*Id.*)

Two years after *Hague,* however, the high court upheld the validity of a New Hampshire parade licensing statute after the Supreme Court of

New Hampshire had narrowly construed the statute as dealing only with "considerations of time, place and manner so as to conserve the public convenience." (*Cox* v. *New Hampshire* (1941) 312 U.S. 569, 575-576 [85 L. Ed. 1049, 1053, 61 S.Ct. 762, 133 A.L.R. 1396].) The New Hampshire court had also interpreted the statute as entitling applicants to a license unless the licensing authority found the convenience of the public would be unduly disturbed by the proposed activity and as requiring that the discretion of the licensing officials be exercised with " 'uniformity of method of treatment upon the facts of each application, free from improper or inappropriate considerations and from unfair discrimination.' " (*Id.* at p. 576 [85 L.Ed. at p. 1054].) The high court stated: "If a municipality has authority to control the use of its public streets for parades or processions, as it undoubtedly has, it cannot be denied authority to give consideration, without unfair discrimination, to time, place and manner in relation to the other proper uses of the streets. We find it impossible to say that the limited authority conferred by the licensing provisions of the statute in question as thus construed by the state court contravened any constitutional right." (*Id.*)

Although *Cox* indicated that licensing statutes confined to time, place and manner regulations and giving the licensing authority narrowly limited discretion might be upheld, the Supreme Court continued to strike down as unconstitutional statutes which did not so narrowly limit the discretion of licensing officials. Thus, in *Saia* v. *New York* (1948) 334 U.S. 558 [92 L.Ed. 1574, 68 S.Ct. 1148], the court, invalidating a statute which forbade the use of loudspeakers unless used "under permission obtained from the Chief of Police," stated: "Any abuses which loud-speakers create can be controlled by narrowly drawn statutes. When a city allows an official to ban them in his uncontrolled discretion, it sanctions a device for suppression of free communication of ideas." (*Id.* at p. 562 [92 L.Ed. at p. 1578].)

A similar result was reached in two 1951 decisions. In *Niemotko* v. *Maryland* (1951) 340 U.S. 268 [95 L.Ed. 267, 71 S.Ct. 325], there was no statute or ordinance but only an amorphous practice that required users of the city park to obtain permits from the park commissioner and city council. The court found that this practice gave city officials unbounded discretion in granting or denying permits and it reversed the conviction of a minister who had spoken in the park without a permit. In *Kunz* v. *New York* (1951) 340 U.S. 290 [95 L.Ed. 280, 71 S.Ct. 312], the court struck down a New York statute which prohibited speaking on the streets of New York without a permit issued by the police commissioner. The statute allowed a permit to be refused if a prior permit had been revoked, but it established no standards to guide the police commissioner in revoking permits. The high court declared: "We have here, then, an ordinance which

gives an administrative official discretionary power to control in advance the rights of citizens to speak on religious matters on the streets of New York. As such, the ordinance is clearly invalid as a prior restraint on the exercise of First Amendment rights." (*Id.* at p. 293 [95 L.Ed. at p. 283].)

Finally, in *Cox* v. *Louisiana* (1965) 379 U.S. 536 [13 L.Ed.2d 471, 85 S.Ct. 453], the Supreme Court summarized and restated the rules developed in these cases. There, the court considered a Louisiana statute which prohibited all parades and demonstrations which obstructed the free use of the public streets. Declining to hold the statute unconstitutional on its face, the court nevertheless noted that state interests must be weighed against constitutionally protected rights and that the continued public order requires that states be allowed reasonably to regulate activities which combine speech with conduct. Justice Goldberg, writing for the court, emphatically rejected the argument "that the First and Fourteenth Amendments afford the same kind of freedom to those who would communicate ideas by conduct such as patrolling, marching, and picketing on streets and highways, as these amendments afford to those who communicate ideas by pure speech." (*Id.* at p. 555 [13 L.Ed.2d at p. 484].) Moreover, the court took the opportunity to reemphasize the holding of *Cox* v. *New Hampshire, supra,* that "appropriate, limited discretion, under properly drawn statutes or ordinances, concerning the time, place, duration, or manner of use of the streets for public assemblies may be vested in administrative officials" if the exercise of that discretion is properly motivated and nondiscriminatory. (*Id.* at p. 558 [13 L.Ed.2d at p. 486].) The court nevertheless reversed the convictions. It appeared that despite the blanket prohibition of the statute, in practice parades and demonstrations were permitted based on arrangements with local officials. Characterizing this practice as equivalent to statutory language permitting parades and demonstrations only in the unbridled discretion of local officials, the court concluded that the law was unconstitutional as applied.

We believe that the foregoing cases, taken together, manifest the following constitutional principles: In determining whether a statute regulating speech violates the First Amendment, we must weigh the state's interest in maintaining peace and order in the streets and other public places against the individual's right to freedom of speech and assembly. When this balance is struck, statutes requiring licenses for parades and demonstrations will not offend the Constitution if they regulate only the time, place, manner and duration of the marches and if they are fairly administered by officials within the range of narrowly limited discretion. On the other hand, any procedure which allows licensing officials wide or unbounded discretion in granting or denying permits is constitutionally infirm because it permits

them to base their determination on the content of the ideas sought to be expressed.

■ We proceed to examine section 9-108 of the Seaside Municipal Code (see fn. 2, *ante*) in the light of the foregoing principles. Although subdivision (a) of section 9-108 simply declares it unlawful "to obstruct the free use of any street or sidewalk," subdivision (b) clearly establishes a licensing scheme for the holding of "parades and/or civic demonstrations." As we read the latter section, we construe it to mean that it is unlawful to hold or participate in any parade or civic demonstration on the public streets or sidewalks of Seaside without first obtaining a permit from the City. The section does not specify the city department or body charged with the duty of receiving the required application and issuing the indispensable permit; this shortcoming, not in itself a fatal defect, nevertheless exacerbates the other imperfections of the ordinance. Apparently the application is to be filed with *some* city department and thereafter submitted (the ordinance does not indicate whether by the applicant or the city department) "to the Police Department and the Fire Department for their approval."

The glaring and fatal defect in the section, however, is that it contains no standards whatsoever—let alone standards designed to be "narrow, objective and definite"—to guide and govern the city officials in their decisions to grant or deny permits. As the Supreme Court said in *Niemotko* v. *Maryland, supra,* 340 U.S. at p. 272 [95 L.Ed. at p. 271], "No standards appear anywhere; no narrowly drawn limitations; no circumscribing of this absolute power; no substantial interest of the community to be served. It is clear that all that has been said about the invalidity of such limitless discretion must be equally applicable here."

The Seaside ordinance is not only devoid of all standards but, to make matters worse, contains no guarantee that a permit will issue even if the application meets all of the five conditions of the section. (See fn. 2, *ante.*) Assuming the conditions are met, the section states only that parades and demonstrations *"may* be permitted." (Italics added.)

In short, the section is a barefaced example of uncontrolled discretion. In the words of the *Shuttlesworth* decision, there can be no doubt that, as written, it confers on the city department involved "virtually unbridled and absolute power to prohibit any 'parade,' 'procession' or 'demonstration' on the city's streets or public ways." (Fn. omitted.) (394 U.S. at p. 150 [22 L.Ed.2d at p. 167].)

In an obvious attempt to avoid the invalidity inherent in the lack of adequate standards, the City contends that the section is constitutional because it does not confer any discretion, but merely provides for the per-

formance of a ministerial duty of issuing a permit upon determination of the suitability of the time, place and manner of the proposed activity. As we have already mentioned, a licensing system solely directed to reasonable time, place and manner regulations, if fairly applied, is not unconstitutional. (*Cox* v. *New Hampshire, supra,* 312 U.S. 569.) But the section here in question is not thus limited. As shown above, the ordinance provides that a permit *may* be issued if the conditions of subdivision (b) are met. The ordinance does not provide that a permit *must* issue if the time, place and manner are suitable.

In the strikingly similar case of *People* v. *Duffy* (1947) 79 Cal.App.2d Supp. 875 [179 P.2d 876], the court found unconstitutional a provision of the Los Angeles Municipal Code which prohibited marches except under a permit issued by the board of police commissioners. The code provided that an application for a permit should contain the planned route and time of the proposed march, its purpose and the names of those in control, but the code did not set forth any standards to guide the police board in determining whether to grant a permit. The court, after a thorough examination of existing precedents, held: "The ordinance before us contains no provision which warrants us in saying that by its terms the Board of Police Commissioners is limited to consider only the correlative rights of the public to parade and to travel on the streets, when it debates whether or not to issue a permit. It is true that the facts which are called for by the application are all, including the 'purpose of such parade or procession,' facts proper to consider if the only question at issue was the adjustment of the two rights, to parade and travel. But nowhere in the ordinance is the board cautioned not to permit their disapproval, or mere lack of approval, of the purpose of the parade to influence their decision. It is not plain from the ordinance that the city council did not expect the board, after careful consideration and acting with the highest motives, to permit the purpose of the paraders to determine, not alone when and where, but also whether, there should be a parade. An ordinance so drawn is invalid, and we are of the opinion that we have no right to add a restriction essential to its validity but which is lacking." (*Id.* at p. 888.)

The same considerations apply here. We have no right to add to this ordinance provisions which it obviously lacks; we cannot find that the ordinance provides only for the exercise of a ministerial duty.[7]

■ We are met with the objection, however, that subdivision (a) of section 9-108, under which petitioners were prosecuted, is constitutional and is

---

[7]We also note that the City itself obviously did not consider the ordinance limited to time, place and manner regulations, since it first raised the contention at oral argument before this court.

severable from the invalid portions of the ordinance. We need not consider whether subdivision (a) in itself is constitutional (cf. Pen. Code, § 647c; *In re Cox* (1970) 3 Cal.3d 205, 217, 223 [90 Cal.Rptr. 24, 474 P.2d 992]; *Hoffman* v. *Municipal Court* (1970) 3 Cal.App.3d 621, 628-629 [83 Cal. Rptr. 747]), for we find that it is an integral part of the ordinance and cannot be severed from subdivisions (b) and (c). The invalidity of the latter subdivisions necessarily infects the entire ordinance including subdivision (a).

Subdivision (a) provides: "It shall be unlawful for any person to obstruct the free use of any street or sidewalk." Subdivision (b) establishes "Exceptions," where a parade permit is sought and granted, and subdivision (c) provides a procedure for appeal to the city council in case the permit is denied. To sever subdivision (a) from the invalid remainder of the ordinance would effectively ban all parades in Seaside. Such a result clearly contravenes the intention of the City of Seaside, which passed this section to provide a method of *licensing,* not *prohibiting* demonstrations. "The test of severability is whether the invalid parts of the statute can be severed from the otherwise valid parts without destroying the statutory scheme, or the utility of the remaining provisions. [Citations.]" (*Blumenthal* v. *Board of Medical Examiners* (1962) 57 Cal.2d 228, 238 [18 Cal.Rptr. 501, 368 P.2d 101].) Since the statutory scheme here established would be destroyed if subdivision (a) were permitted to stand, we hold that it cannot be severed, and the entire ordinance must be considered unconstitutional.

■ We therefore conclude that since the ordinance under which this prosecution was brought is unconstitutional on its face, the respondent court lacks jurisdiction of the criminal proceedings against petitioners. In view of our foregoing conclusions, we deem it unnecessary to consider petitioners' other contentions.

Let a peremptory writ of prohibition issue as prayed for.

Wright, C. J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

**McCOMB, J.**—I dissent. I would deny the writ.