[Civ. No. 46085. First Dist., Div. One. May 14, 1981.]

EUGENE SUSSLI, Plaintiff and Appellant, v.
CITY OF SAN MATEO et al., Defendants and Respondents.

COUNSEL

Pettit & Martin, Neil H. O'Donnell, Leo F. Orenstein, Rogers, Joseph, O'Donnell & Quinn, Margaret C. Crosby, Alan L. Schlosser and Amitai Schwartz for Plaintiff and Appellant.

Maurice K. Hamilton and Douglass Dang, City Attorneys, and Lyle L. Lopus, Assistant City Attorney, for Defendants and Respondents.

John M. Powers, City Attorney (Vallejo), and William R. Galstan, City Attorney (Antioch), as Amici Curiae on behalf of Defendants and Respondents.

OPINION

**NEWSOM, J.**—Appellant Eugene Sussli was a candidate for the San Mateo City Council in an election held on March 8, 1977. Prior to the election, campaign signs supporting the candidacy of appellant and the reelection of another candidate, John Condon, were posted on public property within the city. On February 8, 1977, the city attorney sent a letter to all candidates, including Sussli, informing them that sign posting on public property was prohibited by local ordinance section 25.04.090, reproduced verbatim in the margin,[1] and requesting that all such campaign signs be removed no later than the following week under threat of summary removal by city officials. The letter also advised that under applicable ordinance provisions, sign posting on private property was permissible with the consent of the owner of the property. A copy of the ordinance regulating the time, manner and placement of an "election sign" was included with the written notification.[2]

---

[1]Section 25.04.090 reads as follows: "POSTING ON PUBLIC PROPERTY PROHIBITED. No person, except a duly authorized public officer or employee, shall erect, construct or maintain, paste, paint, print, nail, tack or otherwise fasten or affix, any card, banner, handbill, campaign sign, poster, sign, advertisement, or notice of any kind, or cause or suffer the same to be done, on any curbstone, lamppost, pole, bench, hydrant, bridge, wall, tree, sidewalk or structure in or upon any public street, alley, or upon any other public property, except as may be required or permitted by ordinance or law; no person shall deface, mar or disfigure any bridge, fence, building or other structure belonging to city, or any tree located in any public property or place, by painting, cutting, scratching or breaking the same, or attaching or affixing anything thereto."

[2]Under the provisions of the ordinance (§ 25.12.130)—only peripherally involved herein—the placement of an election or temporary sign on private property is authorized upon the issuance of a city permit, pursuant to conditions requiring the owner's

When the candidates refused to comply with the written request, city personnel undertook removal of the offending signs, resulting in the institution of suit for injunctive and declaratory relief. At the conclusion of the hearing the trial court made its decision upholding the ordinance prohibiting the posting of campaign signs on all public property with its attendant sanction of summary removal. Following the adoption of written findings and conclusion and entry of formal judgment, candidate Sussli instituted this appeal.[3]

■ The principal theory of the complaint is that the challenged ordinance constitutes an impermissible abridgement of the right of free speech guaranteed under the provisions of the federal and state Constitution.[4] Respondents denied the charging allegations and affirmatively alleged that the ordinance was justified on the grounds of overriding governmental interests.[5]

On appeal, while conceding that the right to erect or post signs on public property is subject to reasonable regulations for legitimate governmental purposes, Sussli asserts that the absolute ban imposed by the ordinance of a protected First Amendment interest is constitutionally defective on its face. Moreover, he argues, the governmental interests advanced cannot justify what amounts to an overbroad restriction on the right of free speech.

Respondents counter that the uniform imposition of the prohibition against sign posting on any public property does not represent an un-

---

consent and placement and removal no earlier than six weeks before and ten days after the election date, respectively. Issuance of the permit is further conditioned upon payment of a refundable $25 deposit, subject to forfeiture in the event of noncompliance with the removal condition.

[3]We are advised that Mr. Condon died sometime after the filing of suit.

[4]Unless the context of our discussion indicates otherwise, reference to First Amendment rights is intended to include the similar guaranty under California Constitution article I, section 2.

[5]The public interests to be served were enumerated as follows: 1) prevention of damage to public property; 2) preservation of public confidence in the neutrality of elections; 3) protection of the public from the blare of political propaganda; 4) avoidance of administrative burdens associated with the need to monitor the placement of signs on public property and their eventual removal; 5) preservation of the prominence of public signs and lines of sight in the interests of traffic safety; and aesthetic considerations. The trial court expressly found that in light of the permissible posting of election signs on private property, all of such interests were substantial in relation to the incidental restriction imposed on public property sign posting as a means of expression.

lawful intrusion into traditional forums for protectible First Amendment activities. Alternatively, with heavy reliance placed upon the relevant criteria announced in *Baldwin* v. *Redwood City* (9th Cir. 1976) 540 F.2d 1360, they argue that the governmental interests promoted by the ordinance as found below justify any incidental restriction imposed on the exercise of First Amendment rights.

The precise question presented—characterized by the parties as whether a city may totally prohibit the posting of political signs on public property within the city—is apparently one of first impression.[6] The significance of that central issue is underscored in amici's brief on behalf of 48 California cities who had ordinances similar to the ordinance under review.

Sussli's initial attack on the facial validity of the ordinance focuses upon the mode of expression as a form of protected speech which cannot be entirely banned from a traditional forum for the exercise of First Amendment rights. Thus, the argument continues, once First Amendment protection is extended to the means of communication such as sign posting, any legislative attempt to ban outright such protected medium of speech from the public forum is unconstitutional per se.

In fact the courts have repeatedly recognized that virtually all modes of communication used to disseminate ideas and protected expression on the public streets fall within the protective umbrella of the First Amendment. (*Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 301-302 [138 Cal.Rptr. 53, 562 P.2d 1302] [news racks]; *Police Department of Chicago* v. *Mosley* (1972) 408 U.S. 92 [33 L. Ed.2d 212, 92 S.Ct. 2286] [picketing]; *Schneider* v. *State* (1939) 308 U.S. 147 [84 L.Ed. 155, 60 S.Ct. 146] [leafletting]; *Welton* v. *City of Los Angeles* (1976) 18 Cal.3d 497 [134 Cal.Rptr. 668, 556 P.2d 1119] [roadside map sales]; *Dulaney* v. *Municipal Court, supra*, 11 Cal.3d 77 [sign posting on public utility poles]; *Dillon* v. *Municipal Court* (1971)

---

[6]Whether—and under what circumstances—public property *must* be made available as a forum for First Amendment activities has yet to be definitively determined. (*Dulaney* v. *Municipal Court* (1974) 11 Cal.3d 77, 83, fn. 6 [112 Cal.Rptr. 777, 520 P.2d 1]; *Wirta* v. *Alameda-Contra Costa Transit Dist.* (1967) 68 Cal.2d 51, 54 [64 Cal.Rptr. 430, 434 P.2d 982].) In a closely analogous factual setting, one California court has suggested by way of dictum that total prohibition may be justified upon proof of legitimate governmental interests. (See *People* v. *Katz* (1977) 70 Cal.App.3d Supp. 1, 8 [138 Cal.Rptr. 868]; cf. *Brayton* v. *City of Anchorage* (Alaska 1963) 386 P.2d 832.)

4 Cal.3d 860 [94 Cal.Rptr. 777, 484 P.2d 945] [demonstrations and parades]; *Wollam* v. *City of Palm Springs* (1963) 59 Cal.2d 276 [29 Cal. Rptr. 1, 379 P.2d 481] [sound trucks]; *Remer* v. *City of El Cajon* (1975) 52 Cal.App.3d 441 [125 Cal.Rptr. 116] [newspaper vending boxes]; *California Newspaper Publishers Assn., Inc.* v. *City of Burbank* (1975) 51 Cal.App.3d 50 [123 Cal.Rptr. 880] [newspaper racks].)

In deciding First Amendment claims in the context of regulatory statutes, however, the primary inquiry is not so much whether a particular mode of communication is protected—since "[t]he right of free speech necessarily embodies the means used for its dissemination . . . ." (*Wollam* v. *City of Palm Springs, supra*, 59 Cal.2d 276, 284)—but whether the statute or ordinance, though content-neutral, nevertheless unduly restricts First Amendment rights. (*Baldwin* v. *Redwood City, supra*, 540 F.2d 1360, 1370, fn. 28; *Dulaney* v. *Municipal Court, supra*, 11 Cal.3d at pp. 84-85; *Dillon* v. *Municipal Court, supra*, 4 Cal.3d 860, 869; Tribe, American Constitutional Law (1978) § 12-2, pp. 581-582 (hereafter Tribe).) Constitutional analysis in First Amendment areas has consistently followed a balancing rather than a classifying approach (*Baldwin* v. *Redwood City, supra*, 540 F.2d 1360, 1365), discounting any artificial distinction as to whether the restrictive legislation is termed regulatory or prohibitory. (*Goldblatt* v. *Hempstead* (1962) 369 U.S. 590, 592 [8 L.Ed.2d 130, 132-133, 82 S.Ct. 987]; *Baldwin* v. *Redwood City, supra*, at p. 1370, fn. 28; *Metromedia, Inc.* v. *City of San Diego* (1980) 26 Cal.3d 848, 863 [164 Cal.Rptr. 510, 610 P.2d 407], prob. jur. noted, 449 U.S. 897 [66 L.Ed.2d 127, 101 S.Ct. 265].) Viewing the matter from that perspective, courts have repeatedly upheld the exercise of the police power to *prohibit* the means or mode of communication in order to vindicate sufficiently important governmental interests, even though the prohibition impinges upon First Amendment freedoms. (See *United States* v. *O'Brien* (1968) 391 U.S. 367, 376 [20 L.Ed.2d 672, 679-680, 88 S.Ct. 1673]; *Metromedia, Inc.* v. *City of San Diego, supra*, at pp. 866-867; see also Tribe, *op. cit. supra*, at p. 599.) The principles distilled from the relevant decisions discussing this balancing approach have been well stated in the form of a general rule in *Baldwin* v. *Redwood City, supra* (involving local regulations governing political sign posting on private property) as follows: "Incidental restrictions upon the exercise of the First Amendment rights may be imposed in furtherance of a legitimate governmental interest if that interest is unrelated to suppression of expression and is substantial in relation to the restrictions imposed, and if the restrictions are no greater than nec-

essary or essential to the protection of the governmental interests." (*Id.*, at p. 1365.)[7]

Thus, while section 25.04.090 establishes a blanket prohibition neutrally directed against all inanimate modes of expression on public property (within a regulatory scheme permitting placement of temporary election signs on private property (§ 25.12.130)), the test to be applied in determining whether it survives a constitutional challenge necessarily requires a balancing of competing interests. (*Schneider v. State, supra*, 308 U.S. at p. 161 [84 L.Ed. at pp. 164-165]; *Dulaney v. Municipal Court, supra*, 11 Cal.3d at pp. 84-85.)

In applying the correct constitutional standard, the trial court found that the content-neutral ordinance fostered significant governmental interests, which included traffic safety and aesthetic considerations, interests wholly unrelated to suppression of expression and rationally connected to the restrictions imposed.[8] (Cf. *United States v. O'Brien, supra*, 391 U.S. at p. 377 [20 L.Ed.2d at p. 680]; *Metromedia, Inc. v. City of San Diego, supra*, 26 Cal.3d 848, 858, 871.)

It is equally clear that the First Amendment interests involved in the display of political posters adjacent to public thoroughfares are substantial in nature. (*Baldwin v. Redwood City, supra*, 540 F.2d 1360, 1368.) As one distinguished commentator in the field of constitutional law has observed: "Two variables have been important in structuring the balancing process, and in deciding how heavy a burden of justifica-

---

[7]Where, as here, the regulatory provision is content-neutral requiring a case by case balancing approach, the use of the term "incidental" is to be considered as describing a resulting purpose and effect. That is to say, the causal effect—of whatever magnitude —on the protected activity must be merely incidental to the legislative purpose as distinguished from "insubstantial." (Cf., e.g., *Fair Political Practices Com. v. Superior Court* (1979) 25 Cal.3d 33, 47-48 [157 Cal.Rptr. 855, 599 P.2d 46]; see also Tribe, *op. cit. supra*, at pp. 602-603.) While we recognize that the scope of restrictions on free speech is an important factor to be considered in the weighing process (cf. *Baldwin v. Redwood City, supra*, 540 F.2d at pp. 1372-1373), a pivotal inquiry remains as to whether the governmental interests advanced are substantial in relation to the restrictions imposed since, as previously noted, every regulation in a sense amounts to a prohibition. Consequently, Sussli's insistent claim of total prohibition rather than incidental restriction is wide of the mark, especially when the ordinance does not purport to apply to temporary election signs posted on private property.

[8]Amici suggest other compelling interests involving potential liability exposure for negligently posted signs (see generally Gov. Code, § 835), and—somewhat surprisingly—as "publishers" of libelous political signs. (Cf. *Good Government Group of Seal Beach, Inc. v. Superior Court* (1978) 22 Cal.3d 672 [150 Cal.Rptr. 258, 586 P.2d 572].)

tion—and how large a sacrifice of other goals—to impose on government. The first has been the degree to which any given inhibition on communicative activity falls unevenly upon various groups in the society. . . . [¶] The second variable has been the degree to which the inhibition on communicative activity operates to shut down places that have traditionally been associated with the public exchange of views . . . ." (Tribe, *op. cit. supra*, at pp. 683-684.) In relation to the latter consideration, the City of San Mateo strenuously argues that not only has political sign posting on public property never been extended constitutional protection under the doctrine of traditional forums, but such a claimed right has been expressly rejected in the only relevant reported decision. (See *Brayton* v. *City of Anchorage, supra*, 386 P.2d 832.) Moreover, the city asserts, the availability of private property-posting provides an adequate alternative forum for the exercise of the protected activity. (Cf. *Young* v. *American Mini Theaters* (1976) 427 U.S. 50 [49 L.Ed.2d 310, 96 S.Ct. 2440] [plurality opinion by Stevens, J.].)

Of course, it is settled law that within the context of the traditional public forum, abridgement of the freedom of expression may not be conditioned upon the existence of alternative channels of communication. (*Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 118 [33 L. Ed.2d 222, 233-234, 92 S.Ct. 2294]; *Schneider* v. *State, supra*, 308 U.S. 147, 163 [84 L.Ed. 155, 165-166]; *Wirta* v. *Alameda-Contra Costa Transit Dist., supra*, 68 Cal.2d 51, 59; and cf. *Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899 [153 Cal.Rptr. 854, 592 P.2d 341] (overruling *Diamond* v. *Bland* (1974) 11 Cal.3d 331 [91 Cal. Rptr. 501, 477 P.2d 733]); see also Tribe, *op. cit. supra*, p. 684.) Yet it is a factor to be considered in attempting to strike the proper balance between the right of free expression and legitimate governmental interests. (*Baldwin* v. *Redwood City, supra*, 540 F.2d 1360, 1368; cf., *Metromedia, Inc.* v. *City of San Diego, supra*, 26 Cal.3d 848, 868.)[9]

Certainly, the fact that "means of political communication are not entirely fungible; [and] political posters have unique advantages" (*Baldwin* v. *Redwood City, supra*, 540 F.2d 1360, 1368) should likewise be considered in the balancing process. As the state Supreme Court has noted in another context, "[a]bsent the presence of some con-

---

[9]However, some pragmatic persuasion attaches to Sussli's hypothetical claim suggesting that even the use of alternative channels of communication such as media advertising or private property posting could be effectively foreclosed by reason of cost constraints or the very nature of the expression involved, e.g., proposed property tax increases or rent control issues.

flicting interest that could be protected in no other way, petitioners have the right to choose their own forum." (*In re Hoffman* (1967) 67 Cal.2d 845, 852, fn. 7 [leafletting in public railroad station].)

Thus, although the governmental purpose be legitimate and substantial, such purpose may not be achieved "by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. [Fn. omitted.]" (*Shelton* v. *Tucker* (1960) 364 U.S. 479, 488 [5 L.Ed.2d 231, 237, 815 S.Ct. 247]; *Dulaney* v. *Municipal Court, supra*, 11 Cal.3d 77, 84.) In balancing the competing interests shown to exist "precision of regulation must be the touchstone . . . ." (*N. A. A. C. P.* v. *Button* (1963) 371 U.S. 415, 438 [9 L.Ed.2d 405, 421, 83 S.Ct. 328]; *People* v. *Fogelson* (1978) 21 Cal.3d 158, 166 [145 Cal.Rptr. 542, 577 P.2d 677].) Regulations affecting protected First Amendment activities must be justified by something more than "mere legislative preferences or beliefs respecting matters of public convenience" (*Schneider* v. *State, supra*, 308 U.S. 147, 161 [84 L.Ed. 155, 165]) and are constitutionally permissible "only if they are clearly and narrowly drawn to avoid arbitrary and unnecessary curtailment of freedom of speech . . . ." (*Kash Enterprises, Inc.* v. *City of Los Angeles, supra*, 19 Cal.3d 294, 303.) ■ The burden of establishing whether the regulation in question is sufficiently narrowly drawn in serving a compelling state interest is placed upon the government seeking to impose the regulation. (*Verrilli* v. *City of Concord* (9th Cir. 1977) 548 F.2d 262, 265; *Talley* v. *California* (1960) 362 U.S. 60, 66-67 [4 L.Ed.2d 559, 563-564, 80 S.Ct. 536] (conc. opn.); Tribe, *op. cit. supra*, at p. 722, fn. 3.) Moreover, when First Amendment rights are at issue, a reviewing court must make an independent examination of the whole record in order to determine whether that burden has been satisfactorily met. (*Zeitlin* v. *Arnebergh* (1963) 59 Cal.2d 901, 909 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707].) ■ And, when the facts underlying a curtailment of First Amendment rights are uncontradicted, as here, the validity of the restriction presents a question of law. (*L. A. Teachers Union* v. *L. A. City Bd. of Ed.* (1969) 71 Cal.2d 551, 556 [78 Cal.Rptr. 723, 455 P.2d 827].)

■ As earlier stated, the resolution of this legal question requires a balancing process. In weighing the competing interests at stake, we attach special significance to the compelling interest of the public in maintaining some semblance of visual harmony in the areas where they live. Thousands of tattered derelict signs from past elections testify to the difficulty of protecting public property from unsightly signs even

where laws forbid public posting. Without such laws one foresees an absolute end to the already eroded aesthetic integrity of public places in a tidal wave of publicly sponsored graffiti.[10]

We find it difficult to understand how the legitimate purpose of preventing this inundation could be more "narrowly achieved"—how local government can keep election placards from public poles on public property except by an ordinance prohibiting them.

It may well be that, in circumstances not easily imagined, such an ordinance will, because of overbreadth, have the effect of contravening First Amendment rights. But that overbreadth, if it exists, has imposed no prejudice that we are able to discern upon the appellant Sussli, whose injury seems entirely hypothetical. It is a well-settled principle of constitutional law that "one will not be heard to attack a statute on grounds that are not shown to be applicable to himself, and that a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of constitutionality with reference to hypothetical situations." (*In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305]; and cf. *United States* v. *Raines* (1960) 362 U.S. 17, 21-22 [4 L.Ed.2d 524, 529-530, 80 S.Ct. 519]; *Rubio* v. *Superior Court* (1979) 24 Cal.3d 93, 103 [154 Cal.Rptr. 734, 593 P.2d 595]; *People* v. *Maugh* (1969) 1 Cal.App.3d 856, 862 [82 Cal.Rptr. 147].)

A *sometimes* exception to this rule will obtain "where a provision restricting free speech and the free dissemination of ideas is involved," in which case a court, in considering overbreadth or vagueness, "may take into account the operation of the provision as to factual situations other than the one at bar." (*Fort* v. *Civil Service Commission* (1964) 61 Cal.2d 331, 339 [38 Cal.Rptr. 625, 392 P.2d 385].) No constitutional *duty*, however, mandates invoking this exception where it is contrary to the express desire of the people of the cities of California to control the proliferation of urban clutter.

---

[10]The rational basis for differentiating between political signs relating to specific elections and those which pertain to the conduct of government in general seems tenuous at best. (Cf. *Wirta* v. *Alameda-Contra Costa Transit Dist., supra*, 68 Cal.3d 51.) If the subject ordinance falls, it is difficult to rationalize a valid basis for prohibiting the public posting of signs ranging from "Question Authority" to "Save the Red Brigade" or "Down with the Shah." It is, indeed, probable that the county could then be required to provide public space for any noncommercial message, such as "Roommate Desired" or "Merry Christmas."

In arriving at this conclusion, we would stress that those who follow in Sussli's footsteps will, like him, have available to them innumerable modes of political expression in both private and public forums, including the unchallengable right to use public places for traditional speech. To say that this is insufficient merely because it is incomplete, and that every man has at all times an unabridgible right to use every possible means of expression irrespective of any legitimate counteravailing public interest, seems to us erroneous.

For these reasons we conclude that the trial court correctly concluded that the ordinance at issue is constitutionally permissible.

The judgment is affirmed.

Elkington, J., concurred.

**RACANELLI, P. J.**—I respectfully dissent:

Under the broad prohibition imposed by the ordinance, sign posting of any nature on public property "except as may be required or permitted by ordinance or law" (§ 25.04.090)[1] is wholly forbidden. The sweeping provisions would extend to posters and signs of *any* nature, whether temporary or otherwise, placed upon *any* public property including streets, sidewalks and parks. Such overinclusive language would condemn even the use of privately mounted temporary political placards or notices inoffensively placed upon a public sidewalk either with the consent of or by the occupier of abutting business premises. Certainly such time-honored means of political expression should be afforded the same level of reasonable access as extended to the dissemination of other protected materials. (Cf., e.g., *Remer* v. *City of El Cajon* (1975) 52 Cal.App.3d 441 [125 Cal.Rptr. 116]; *California Newspaper Publishers Assn., Inc.* v. *City of Burbank* (1975) 51 Cal.App.3d 50 [123 Cal.Rptr. 880] [newsracks].) The city's attempt to rely on other decisions concerning billboard restrictions (see e.g., *John Donnelly & Sons* v. *Mallar*, (D.Me. 1978) 453 F.Supp. 1272; *Suffolk Outdoor Advertising Co.* v. *Hulse* (1977) 43 N.Y. 2d 483 [402 N.Y.S.2d 368, 373 N.E.2d 263]) manifestly is unjustified since the protection of commercial speech involved in such cases has always occupied a lesser position in the hierarchy of protected First Amendment activities. (Cf. *Bates* v.

---

[1]During oral argument the city conceded that no exceptions had thus far been ordained.

*State Bar of Arizona* (1976) 433 U.S. 350 [53 L.Ed.2d 510, 97 S.Ct. 2691]; *Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748 [48 L.Ed.2d 346, 96 S.Ct. 1817]; *Metromedia, Inc.* v. *City of San Diego* (1980) 26 Cal.3d 848 [164 Cal.Rptr. 510, 610 P.2d 407].)

While considerations of public safety undoubtedly warrant the imposition of reasonable restrictions, the city could easily achieve such an objective by a more narrowly drawn ordinance relating to public placement of temporary political signs.[2] Nor will aesthetic considerations alone justify unrestricted intrusion into constitutionally protected areas. (See *Van Nuys Pub. Co.* v. *City of Thousand Oaks* (1971) 5 Cal.3d 817, 822 [97 Cal.Rptr. 777, 489 P.2d 809].) Any offensive blare and bombardment of political propaganda may be readily muted simply by looking away. (See *Cohen* v. *California* (1971) 403 U.S. 15, 21 [29 L.Ed.2d 284, 291-292, 91 S.Ct. 1780].) Further, the administrative burdens associated with the supervision of public sign posting and removal of offending signs may be accomplished by alternate and substantially less restrictive means which—even if not entirely successful—would impose a minimal burden at best (*Baldwin* v. *Redwood City* (9th Cir. 1976) 540 F.2d 1360, 1370) and but "a small price to pay for preservation of ... [a] ... most cherished right." (*Wirta* v. *Alameda-Contra Costa Transit Dist.* (1967) 68 Cal.2d 51, 62 [64 Cal.Rptr. 430, 434 P.2d 982].) Thus, although the nature of the interests advanced may justify suitable restrictions on the time, place and manner of political expression, nonetheless such objectives must be achieved in a less broadly restrictive fashion. The challenged provisions fail to comply with that basic limitation.

In a democratic society the right of free expression occupies a most preferred position (see *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 690-691 [68 Cal.Rptr. 721, 441 P.2d 281]), secure from overreaching governmental regulations. Free expression of political thought

---

[2]For example, section 25.12.130, subdivision (4), provides in pertinent part that election signs may not be placed "in such manner as to pose a visibility hazard to pedestrian and motor vehicle traffic along the public highway, sidewalks or at street corners."

It must be emphasized that no claim is or could be made that local government may not enact regulations designed to prevent damage or defacement of publicly owned structures as provided in the last full sentence of section 25.04.090. (See *National Delivery Systems, Inc.* v. *City of Inglewood* (1974) 43 Cal.App.3d 573, 579 [117 Cal.Rptr. 791].) If the ordinance were redrafted, that provision could be included intact as a valid exercise of the city's inherent police powers. (Cf. *In re Hoffman* (1967) 67 Cal.2d 845, 853-854 [64 Cal.Rptr. 97, 434 P.2d 353].)

and political choice should always be worth more to a free society than its costs. Contrary to the dismal scenario set in the majority opinion, it is much more rational to believe that carefully crafted regulations accomodating basic constitutional rights can be implemented to ward off the specter of environmental blight and the sea of scribblings graphically predicted in that gloomy forecast.

In its effort to balance the competing interests involved, the majority strikes a devastating blow to a long established method of political expression utilizing a medium which often—as Marshall McLuhan admonishes—is the message itself.

Since the critical language of the ordinance herein purports to totally circumscribe the exercise of a fundamental individual liberty within traditional public forums whose use for purposes of free expression has been entrusted from time immemorial (*Hague* v. *C. I. O.* (1939) 307 U.S. 496, 515 [83 L.Ed. 1423, 1436-1437, 59 S.Ct. 954]), it is facially overbroad and constitutionally defective. (*Remer* v. *City of El Cajon, supra*, 52 Cal.App.3d 441, 444.) Accordingly, I would reverse the judgment.

A petition for a rehearing was denied June 12, 1981. Racanelli, P. J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied July 8, 1981.