[No. F003074. Fifth Dist. Feb. 18, 1986.*]

WOMEN'S INTERNATIONAL LEAGUE FOR PEACE AND FREEDOM, FRESNO BRANCH, Plaintiff and Appellant, v. CITY OF FRESNO, Defendant and Appellant.

*Review granted May 22, 1986. Review dismissed and opinion ordered published on

COUNSEL

Jerry E. Berg, James L. Kaller, Margaret C. Crosby, Alan L. Schlosser, Edward M. Chen, Amitai Schwartz, Mary Louise Frampton and Howard K. Watkins for Plaintiff and Appellant.

James A. McKelvey, City Attorney, Edwin A. Oeser and Robert D. Gabriele, Assistant City Attorneys, for Defendant and Appellant.

## OPINION

**WOOLPERT, Acting P. J.**—In this case we consider whether a municipal code provision prohibiting political advertising on municipally owned and operated buses was constitutional. We conclude the trial court erred when it found that municipally owned and operated buses became public forums for political advertising once the city agreed to accept commercial advertising.

In 1981 plaintiff Women's International League for Peace and Freedom, Fresno Branch (League) sued defendant City of Fresno (City) among others in a verified complaint for declaratory and injunctive relief. The League challenged a Fresno Municipal Code section as well as City's application of the section which resulted in the removal of the League's advertising signs from Fresno Transit buses.

Following a court trial, the superior court declared the section unconstitutional and enjoined City from enforcing it against the League. The court, however, denied the League's request for a mandatory injunction requiring City to replace and display the destroyed signs. City appeals the judgment to the extent it declares section 2-2809(c) unconstitutional and enjoins City from enforcing it against the League. The League challenges the order denying the mandatory injunction.

### THE FACTS

The League is an unincorporated association opposed to war or the preparation for war. In 1980, the League sought to display on Fresno Transit buses placards which read:

"Why is this the only job our government has to offer 19-20 year olds?

"THINK BEFORE YOU REGISTER FOR THE DRAFT.

"Women's International League for Peace and Freedom. Fresno, California 93704 Ph. 268-7492" In addition, the signs depicted armed soldiers.

City owns and operates Fresno Transit, a public transportation system in the city. City exclusively consigns the advertising space in and on its buses to a concessionaire who, in turn, rents the space to individuals for the purposes of displaying advertising signs. The concession agreement between City and its agent provides in relevant part: "Concessionaire shall not display

signs of any nature advertising or implying a position, for or against, any political candidate or subject."

This condition is based upon Fresno Municipal Code section 2-2809(c),[1] which provides: "(c) No political advertising matter or sign shall be displayed upon any bus or on transit property."

City adopted section 2-2809(c) "to avoid consequences that may discourage, rather than enhance ridership and result in either reduced subsidies, increased fares or diminished services."

On December 5, 1980, the League contracted with City's exclusive concessionaire to display 45 signs containing their registration message inside Fresno Transit buses during January 1981. On January 13, shortly after the signs appeared, the Fresno City Manager caused Fresno Transit to remove them because: "(1) The placard language contained false and misleading information; (3) [*sic*] advocated illegal activity; (3) contained a '*political message*;' and (4) complaints were received from veterans' groups and others protesting and manifesting 'tremendous anger and emotion' over the use of city buses to advocate the violation of federal law."

SECTION 2-2809(c).

In its statement of decision, the trial court, relying on *Lehman* v. *City of Shaker Heights* (1974) 418 U.S. 298 [41 L.Ed.2d 770, 94 S.Ct. 2714], found that City's ban of political advertising on Fresno Transit buses did not violate *federal* constitutional law. The trial court reasoned: "*Lehman* holds limitations of political speech in transit buses is not constitutionally proscribed, in effect holding a bus is not an appropriate 'marketplace' for political expression."

However, the trial court found section 2-2809(c) violated article I, section 2, of the California Constitution. From its analysis of numerous recent California Supreme Court decisions, the court reasoned that article I, section 2, of the California Constitution conferred broader free speech protection than the First Amendment. It concluded that while *Wirta* v. *Alameda-Contra Costa Transit Dist.* (1967) 68 Cal.2d 51 [64 Cal.Rptr. 430, 434 P.2d 982], "to the extent founded on the First Amendment, is no longer controlling, it stands as an explicit articulation of what the highest court in our State considers freedom of speech, and governmental interference with such speech, insofar as it relates to transit bus advertising. The language of *Wirta*

---

[1]All statutory references are to the Fresno Municipal Code unless otherwise indicated.

makes compelling the conclusion that a similar result would and should be reached under Article I, Section 2 of the California Constitution."

City challenges this conclusion. It claims the trial court erred by characterizing Fresno Transit buses as a public forum. According to City, *Wirta* was a First Amendment case which the United States Supreme Court in *Lehman* overruled on the question of whether transit buses are a public forum.

In *Wirta,* Women for Peace, an organization promoting world peace through education, tried to place the following advertisement on Alameda-Contra Costa Transit District buses:

"'"Mankind must put an end to war or war will put an end to mankind."

"'President John F. Kennedy.

"'Write to President Johnson: Negotiate Vietnam.

"'Women for Peace
"'P. O. Box 944, Berkeley.'" (*Id.,* at p. 53.)

The district and its agent refused to accept the advertisement, claiming it conflicted with the district's policy of accepting only advertisements relating to sales of goods and services or elections. The California Supreme Court concluded that the district "having opened a forum for the expression of ideas by providing facilities for advertisements on its buses, cannot for reasons of administrative convenience decline to accept advertisements expressing opinions and beliefs within the ambit of First Amendment protection." (*Id.,* at p. 55.)

In finding the district's policy violated the organization members' First Amendment rights, our state Supreme Court noted in relevant part: "Not only does the district's policy prefer certain classes of protected ideas over others but it goes even further and affords total freedom of the forum to mercantile messages while banning the vast majority of opinions and beliefs extant which enjoy First Amendment protection because of their noncommercialism." (*Id.,* at pp. 56-57.)

Subsequently in 1974, the United States Supreme Court in *Lehman* v. *City of Shaker Heights, supra,* 418 U.S. 298, addressed whether a municipal transit system could prohibit *any* political or public issue advertising on its buses. In concluding Shaker Heights could prohibit such bus advertising,

the high court held that advertising space in buses or "car card space" was not a public forum protected by the First Amendment.

"In these circumstances, the managerial decision to limit car card space to innocuous and less controversial commercial and service oriented advertising does not rise to the dignity of a First Amendment violation. . . .

"No First Amendment forum is here to be found. The city consciously has limited access to its transit system advertising space in order to minimize chances of abuse, the appearance of favoritism, and the risk of imposing upon a captive audience. These are reasonable legislative objectives advanced by the city in a proprietary capacity." (*Id.*, at p. 304 [41 L.Ed.2d at p. 778].)

Clearly *Lehman* binds this court with respect to a First Amendment challenge to section 2-2809(c). Even so, we must determine the effect of California Constitution article I, section 2, on the League's advertisement.

City urges this court to rely on *Lehman* and uphold the section. It claims the *Wirta* decision is factually distinguishable and therefore not controlling in this case. Moreover, *Wirta's* analysis is based solely on the First Amendment and contains no reference to the California Constitution. Accordingly, *Wirta* is only of historical interest in light of *Lehman*.

By contrast, the League contends *Wirta* is neither factually distinguishable nor valueless merely because *Lehman* discredited it as a matter of federal law. More importantly, the League reasons that California courts have fashioned an independent body of case law which interprets the California Constitution and speaks favorably of *Wirta*. Thus, *Wirta* is an important precedent in interpreting the scope of protection afforded by the California Constitution in this case.

The Transit District in *Wirta* accepted political advertisements relating to election and ballot issues *in addition to* commercial advertisements. By contrast, section 2-2809(c) prohibits *all* forms of political advertising. City contends this distinction is significant. By permitting some forms of political advertising on their buses, the Transit District in *Wirta* "opened the forum." Thus, the California Supreme Court did not decide whether the interior of a bus was a public forum, while the U.S. Supreme Court in *Lehman* specifically did.

More accurately, in *Wirta*, the California Supreme Court candidly wrote: "[W]e avoid the considerations applicable to ascertaining whether public

property must be made available as a forum for the exercise of First Amendment rights." (*Wirta* v. *Alameda-Contra Costa Transit Dist., supra,* 68 Cal.2d at p. 54.) The court used a discrete preliminary fact analysis: "[T]he determination of the district to accept *advertising* on its motor coaches served as its considered conclusion that this form of communication will not interfere with its primary function of providing transportation." (*Ibid.*; italics added.)

Although the *Wirta* court employed an "opened the forum" approach, it did so with some attention to the content of the advertisements. Unprotected commercial advertising was part of the opened forum analysis. However, the court's emphasis was on political censorship: "The vice is not that the district has preferred one point of view over another, but that it chooses between classes of ideas entitled to constitutional protection, sanctioning the expression of only those selected, and banning all others." (*Id.,* at p. 56.)

The broad "opened the forum" analysis of *Wirta* has not been limited to cases in which the entity permits some but not all forms of political expression. For example, in *Dulaney* v. *Municipal Court* (1974) 11 Cal.3d 77 [112 Cal.Rptr. 777, 520 P.2d 1], the City and County of San Francisco prohibited posting notices on utility poles without permission of the owner of the pole and the Department of Public Works. Justice Sullivan wrote for the majority: "[E]ven assuming that utility poles need not be made available as a forum for exercising First Amendment rights, the ordinance on its face makes such poles accessible for posting notices where the consent of the owner and the Department is obtained. Contrary to the People's claim, the ordinance, therefore, has 'opened the forum.'" (*Id.,* at p. 82.)

However, in *Dulaney* the court focused not on the discrimination between classes of ideas, as in *Wirta,* but rather on the manner in which the space was made available.

"The issue here is whether after making the poles available for the posting of signs and thus for the exercise of First Amendment rights, the City may regulate their use as such by means of a standardless licensing scheme 'which allows licensing officials wide or unbounded discretion in granting or denying permits' [citation omitted], thereby effecting an invalid prior restraint on freedom of speech." (*Id.,* at p. 88.) No such potential for abuse was present in our case as City prohibited all advertising involving protected political speech. Thus we agree *Wirta* is factually distinguishable from the present case.

Nevertheless, we are asked to consider the broad implications of the *Wirta* case, as did the trial judge. ■ Our discipline is clear: the California

high court ultimately determines California constitutional law absent federal supremacy. We search for the "California rule." Indeed, at times we try to anticipate it when the precedents are unclear. In this case we seriously consider *Wirta* and its implications for our factual situation. Even so, we do not believe our state Supreme Court would hold *Wirta's* rule cast in stone and immune from variation under different conditions.

Article I, section 2, subdivision (a), of the California Constitution provides: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

In *Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899, 908 [153 Cal.Rptr. 854, 592 P.2d 341], the court discussed the role of article I, section 2: "Though the framers could have adopted the words of the federal Bill of Rights they chose not to do so. [Citation.] Special protections thus accorded speech are marked in this court's opinions. *Wilson* v. *Superior Court* (1975) 13 Cal.3d 652, 658 . . . ., for instance, noted that '[a] protective provision more definitive and inclusive than the First Amendment is contained in our state constitutional guarantee of the right of free speech and press.'"

The issue in *Robins, supra,* was whether federally protected private property rights barred the state Supreme Court from ruling that the California Constitution creates broader speech rights as to private property than does the United States Constitution. The court held that the California Constitution protects speech and petitioning in privately owned shopping centers despite the U.S. Supreme Court decision in *Lloyd Corp.* v. *Tanner* (1972) 407 U.S. 551 [33 L.Ed.2d 131, 92 S.Ct. 2219]. In the process, the court noted that federal precedents are relevant "but not conclusive so long as federal rights are protected." (*Robins, supra,* at p. 909.) In this case, federal constitutional rights are not at risk. Thus, *Lehman* is not conclusive.

City contends *Robins* is limited to its context of shopping centers and therefore is factually distinguishable. We disagree. *Robins* speaks to more than a right to petition in privately owned shopping centers. Indeed, when read in conjunction with *Committee to Defend Reproductive Rights* v. *Myers* (1981) 29 Cal.3d 252 [172 Cal.Rptr. 866, 625 P.2d 779, 20 A.L.R.4th 1118], as well as two recent appellate decisions, *U. C. Nuclear Weapons Labs Conversion Project* v. *Lawrence Livermore Laboratory* (1984) 154 Cal.App.3d 1157 [201 Cal.Rptr. 837] and *Prisoner's Union* v. *Department of Corrections* (1982) 135 Cal.App.3d 930 [185 Cal.Rptr. 634], *Robins* demonstrates that the California Constitution is independent of the federal

Constitution and may in some cases, for instance speech, afford broader constitutional guarantees.

City then cites *Sussli* v. *City of San Mateo* (1981) 120 Cal.App.3d 1 [173 Cal.Rptr. 781], for the proposition that there is a strong similarity between the federal and state free speech amendments and the resulting case law. City overstates *Sussli.* In *Sussli,* the appellate court affirmed the validity of a local ordinance which prohibited posting *any* signs on public property. In doing so, the court merely characterized article I, section 2, as a similar guarantee of First Amendment rights. The point made by *Robins* is that article I, section 2, goes beyond the First Amendment and may provide greater speech protections.

As the court in *People* v. *Chavez* (1980) 26 Cal.3d 334, 352 [161 Cal.Rptr. 762, 605 P.2d 401], explained: "[J]ust as the United States Supreme Court bears the ultimate judicial responsibility for determining matters of federal law, this court bears the ultimate judicial responsibility for resolving questions of state law, including the proper interpretation of provisions of the state Constitution. [Citations.] In fulfilling this difficult and grave responsibility, we cannot properly relegate our task to the judicial guardians of the federal Constitution, but instead must recognize our personal obligation to exercise independent legal judgment in ascertaining the meaning and application of state constitutional provisions."

The question thus becomes whether *Wirta,* in light of *Lehman,* has lost its usefulness. In *Robins,* the court warned that just because California decisions "cited federal law that subsequently took a divergent course does not diminish their usefulness as precedent." (*Robins* v. *Pruneyard Shopping Center, supra,* 23 Cal.3d at p. 908.)

In *Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d at page 267, the court also noted that federal decisions in the area of publicly conferred benefits have not recently been "a reliable barometer of the governing California constitutional principles." The court specifically referred to *Wirta* and *Lehman* in this regard: "[I]n *Wirta* v. *Alameda-Contra Costa Transit Dist., supra,* 68 Cal.2d 51, our court, applying the principles of *Danskin* and *Bagley,* struck down a discriminatory public transit advertising policy which made advertising space on public buses available for commercial expression but denied this 'public benefit' to those who wished to advertise their views upon noncommercial, political subjects. In *Lehman* v. *City of Shaker Heights* (1974) 418 U.S. 298 [41 L.Ed.2d 770, 94 S.Ct. 2714], however, the United States Supreme Court, when faced with the identical issue presented in *Wirta,* declined to engage in the demanding

scrutiny called for by the California precedents and sustained the unequal advertising policy under the federal Constitution." (*Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d at p. 266.)

Thus, the League argues that the Supreme Court in *Committee to Defend Reproductive Rights* suggests *Wirta,* not *Lehman,* more accurately reflects California constitutional principles. Even so, our state Supreme Court's reliance on *Wirta* as an example of our state constitutional independence should not be misinterpreted as a holding that *Lehman* is incompatible with California law.

In *Wirta* one form of expression was before the court, advertisements in publicly owned and operated motor coaches. The advertisements were of two kinds. One, the commercial message, did not enjoy First Amendment protection. (*Wirta* v. *Alameda-Contra Costa Transit Dist., supra,* 68 Cal.2d 51, 57.) The other, political advertising, was undeniably protected. (*Id.,* at p. 54.) *Wirta's* precise holding was: "A regulation which permits those who offer goods and services for sale and those who wish to express ideas relating to elections access to such forum while denying it to those who desire to express other ideas and beliefs, protected by the First Amendment, cannot be upheld." (*Id.,* at p. 63.)

The court majority in *Wirta* relied, with obvious respect, on the wisdom of Justice Douglas, quoting his words in *Terminiello* v. *Chicago* (1949) 337 U.S. 1, 4 [93 L.Ed. 1131, 1134, 69 S.Ct. 894]: "'. . . a function of free speech under our system of government is to invite dispute. . . . Speech is often provocative and challenging. It may strike at prejudices and precon-ceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute . . . is nevertheless protected against censorship or punishment, unless likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" (*Wirta* v. *Alameda-Contra Costa Transit Dist., supra,* 68 Cal.2d at p. 62.)

It is true that the *Wirta* court relied solely on federal cases to reach its conclusion. California constitutional principles were not before the court. Neither was the court presented with our facts which are similar to those later presented in *Lehman.* The "majority" in *Lehman* expressed itself in two opinions. Four justices acknowledged *Wirta,* but then reached the con-clusion that no First Amendment forum is present within public transpor-tation vehicles. As in our case, "[t]he city consciously has limited access to its transit system advertising space in order to minimize chances of abuse, the appearance of favoritism, and the risk of imposing upon a captive

audience. These are reasonable legislative objectives advanced by the city in a proprietary capacity." (*Lehman* v. *City of Shaker Heights, supra,* 418 U.S. 298, 304 [41 L.Ed.2d 770, 778].)

Justice Douglas, concurring in the judgment, expressed at length his carefully considered views that a streetcar or bus was not a public forum and passengers were captive audiences of all advertising within the vehicle. It made no difference whether the vehicle was publicly owned. The fact that public transportation was a necessity for many commuters rendered them captive viewers or listeners.

"In asking us to force the system to accept his message as a vindication of his constitutional rights, the petitioner overlooks the constitutional rights of the commuters. While petitioner clearly has a right to express his views to those who wish to listen, he has no right to force his message upon an audience incapable of declining to receive it. In my view the right of the commuters to be free from forced intrusions on their privacy precludes the city from transforming its vehicles of public transportation into forums for the dissemination of ideas upon this captive audience." (*Id.,* at p. 307 [41 L.Ed.2d at p. 779].)

Thus, at the time of the *Lehman* opinion, the majority was of the view that public transportation vehicles are not public forums.

Our rather narrow issue brings us to an "all or nothing" question. Here, the legislative body decided to permit commercial advertising which it could regulate as nonprotected expression, but tried to avoid controversy by excluding *all* protected forms of political communication. No legislative or administrative discretion was retained. City avoided discrimination among classes of such protected communication; no one was permitted to make exceptions to allow favored groups to advertise politically. Thus the ultimate question: To avoid the constitutional challenge, must City prohibit all commercial advertising to avoid opening the forum on buses?

In this case the consequences to the public of allowing political advertising of any kind within its buses concerned City. The concern was based upon the hypothesis which became reality when the League's advertisement resulted in public uproar. Protected speech is designed to encourage reaction, and sometimes incurs anger or hostile response. ■ However, Justice Douglas and others have emphasized that public transportation involves passengers whose circumstances require their use of the public mode of travel.

Courts are well aware that public transportation exposes passengers to increasingly unpleasant experiences.[2] Sensitivity to the safety and personal feelings of passengers may permit reasonable restrictions against forms of activity and expression which may come into conflict with the constitutionally protected privacy rights of the passengers. In this case the public entity chose to avoid advertisements which could not be restricted.

Although the *Lehman* case has been severely criticized (see Note (1975) 28 Stan.L.Rev. 117), the obvious concern of the plurality justices and Justice Douglas for the privacy rights of the passengers was a realistic one—even if it appears to be in conflict with the view that once any form of communication is allowed, no restrictions are permissible. The *Lehman* consensus appears to coincide with the commonplace public attitude that commercial advertisements are not taken seriously and therefore have little or no speech value. In effect, in *Lehman* the forum was not opened.

Assuming City's decision to limit advertising sign space to commercial material requires a strict scrutiny review, we have no hesitancy to find the privacy rights of the "captive audience" justified the exclusion within transit buses of all forms of expression which could not otherwise be restricted. California has constitutionally memorialized the right to privacy (Cal. Const., art. I, § 1), and although that right is not absolute (*People* v. *Stritzinger* (1983) 34 Cal.3d 505, 511 [194 Cal.Rptr. 431, 668 P.2d 738]), its role in public transportation deserves fair consideration. (See *People* v. *Cook* (1985) 41 Cal.3d 373 [221 Cal.Rptr. 499, 710 P.2d 299], privacy extends into some otherwise public spaces.)

Therefore we hold that the area within a transit bus is not a public forum worthy of constitutional protection under the California Constitution. We conclude section 2-2809(c) as it applies to advertising within Fresno Transit buses is constitutional.

---

[2]Consider the recent opinion of the California Supreme Court in *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780 [221 Cal.Rptr. 840, 710 P.2d 907]. The court held in relevant part: "Civil Code section 2100 imposes upon all common carriers—public or private—a duty of utmost care and diligence to protect their passengers from assaults by fellow passengers." (*Id.*, at p. 791.)

In doing so the court remarked: "As Justice Johnson noted in his opinion for the Court of Appeal in this case, bus passengers are 'sealed in a moving steel cocoon.' Large numbers of strangers are forced into very close physical contact with one another under conditions that often are crowded, noisy, and overheated. At the same time, the means of entering and exiting the bus are limited and under the exclusive control of the bus driver. Thus, passengers have no control over who is admitted on the bus and, if trouble arises, are wholly dependent upon the bus driver to summon help or provide a means of escape. These characteristics of buses are, at the very least, conducive to outbreaks of violence between passengers and at the same time significantly limit the means by which passengers can protect themselves from assaults by fellow passengers." (*Id.*, at p. 789.)

Because of our conclusion, we do not reach the issue raised by the League's appeal, namely, whether a portion of their registration message, "Think Before You Register for the Draft" is constitutionally protected speech.

## DISPOSITION

To the extent the trial court declared section 2-2809(c) unconstitutional and enjoined City from enforcing it, the judgment is reversed. The appeal by the League is dismissed. (*Turner* v. *Markham* (1909) 156 Cal. 68 [103 P. 319].) Neither party is entitled to attorney fees. Each party to bear its own costs on appeal.

Martin, J., and Hamlin, J., concurred.