TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 96-309 |
| of | : | |
| | : | November 21, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY M. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE THOMAS W. SNEDDON, JR., DISTRICT ATTORNEY OF SANTA BARBARA COUNTY, has requested an opinion on the following question:

Does a telephone directory yellow pages advertisement by an attorney that contains the phrase "workers' compensation" or "industrial injuries" require the placement of a notice regarding the filing of a false or fraudulent workers' compensation claim on the page where the advertisement is located?

CONCLUSION

A telephone directory yellow pages advertisement by an attorney that contains the phrase "workers' compensation" or "industrial injuries" requires the placement of a notice regarding the filing of a false or fraudulent workers' compensation claim on the page where the advertisement is located.

ANALYSIS

The question submitted for resolution involves the interpretation of the Workers' Compensation Truth in Advertising Act of 1992 (Lab. Code, §§ 5430-5434; "Act").[1] Section 5431 expresses the Legislature's intent in adopting the Act:

_____
[1] Unless otherwise indicated, all section references hereafter are to the Labor Code.

1.                                                                                          96-309

"The purpose of this chapter is to assure truthful and adequate disclosure of all material and relevant information in the advertising which solicits persons to file workers' compensation claims or to engage or consult counsel or a medical care provider or clinic to consider a workers' compensation claim."

We are asked specifically to construe the language of subdivision (a) of section 5432, which states as follows:

"Any advertisement which solicits persons to file workers' compensation claims or to engage or consult counsel or a medical care provider or clinic to consider a workers' compensation claim in any newspaper, magazine, circular, form letter, or open publication, published, distributed, or circulated in this state, or on any billboard, card, label, transit advertisement or other written advertising medium shall state at the top or bottom on the front side or surface of the document in at least 12-point roman boldface type font, . . . the following:

NOTICE

"Making a false or fraudulent worker's compensation claim is a felony subject to up to 5 years in prison or a fine of up to $50,000 or double the value of the fraud, whichever is greater, or by both imprisonment and fine."

Are the requirements of subdivision (a) of section 5432 applicable to a telephone directory yellow pages advertisement placed by an attorney that contains the phrase "workers' compensation" or "industrial injuries"? We conclude that the requirements are applicable and that the requisite notice must appear on each page containing such an advertisement.

There can be no doubt that business listings in the yellow pages of a telephone directory are a form of advertising. Telephone companies promote them as such, and several United States Supreme Court cases have treated listings for goods or services in the yellow pages as any other form of written advertising. Indeed, the court has never distinguished among the various forms of written advertising to the general public. (See *Shapero* v. *Kentucky Bar Association* (1988) 486 U.S. 466, 473; see also *Ibanez* v. *Florida Bd. of Accountancy* (1994) 512 U.S. ___, 129 L.Ed.2d 118, 124; *In re R.M.J.* (1982) 455 U.S. 191, 205-208; *Bates* v. *State Bar of Arizona* (1977) 433 U.S. 350, 372, fn. 26.)

It is true that section 5432 does not expressly mention yellow pages advertisements. Nevertheless, it is apparent that the Legislature intended to apply the requirements of the Act to all forms of advertising, not merely those specifically identified in section 5432. Section 5432 begins with a reference to "any advertising" and proceeds to an enumeration of various types of advertising, followed by the phrase "or other written advertising medium." This, combined with the stated purpose of the Act contained in section 5431, makes it clear that the Legislature intended to give a broad reach to the Act's requirements. Both the plain meaning of the words used (see *DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601) and the expressed intent of the Legislature (see *Freedom*

*Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826) support the conclusion that section 5432 is applicable to telephone directory yellow pages advertisements.

Does the phrase "[a]ny advertisement which solicits . . ." limit the application of subdivision (a) of section 5432 to "solicitations" and not other types of advertising? For some purposes a distinction has been drawn between general advertising and the direct solicitation of a particular individual by an attorney. (See Rule 1-400, Rules Prof. Conduct of State Bar; *Ohralik* v. *Ohio State Bar Assn.* (1978) 436 U.S. 447; *Jacoby* v. *State Bar* (1977) 19 Cal.3d 368.) While that difference may be significant for purposes of prohibiting certain conduct (i.e., solicitation of individuals) by attorneys while preserving their First Amendment right to advertise (*Bates* v. *State Bar of Arizona, supra,* 433 U.S. 350), we do not believe the Legislature intended to draw such distinction in section 5432. Rather, the word "solicits" is used in its more ordinary sense of a general solicitation addressed to the public utilizing an advertising medium. "Solicit" commonly means "to endeavor to obtain by asking." (Webster's Third New Internat. Dict. (1971) p. 2169.) "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. [Citations.]" (*DaFonte* v. *Up-Right, Inc.*, *supra*, 2 Cal.4th at 601.) We believe that the language of the Act, both literally and in keeping with its expressed purpose, is intended to cover all forms of written advertising, and not merely those which fit a narrow subset of written advertisements.

Since the telephone yellow pages comprise an "advertising medium," a listing which "solicits persons to . . . engage or consult counsel . . . to consider a workers' compensation claim" is subject to the notice requirement of section 5432. Here the attorney listings include the phrase "workers' compensation" or "industrial injuries." Whatever other reasons might exist for including that information in a yellow pages listing, it can hardly be doubted that one purpose is to solicit business from people seeking to consult counsel regarding a workers' compensation claim. Accordingly, we believe that subdivision (a) of section 5432 is applicable to the yellow pages advertisements described herein.

In particular, we note that the Legislature did not expressly require the words "workers' compensation" to appear in an advertisement subject to the terms of section 5432. Rather, the Legislature was concerned with the effect of the advertisement. If an advertisement, in fact, "solicits persons to . . . engage or consult counsel . . . to consider a workers' compensation claim," it does not matter what specific words are used to convey that solicitation. It would be inconsistent with the stated purpose of the Act to allow an attorney to avoid its effect by the simple expedient of using such terms as "industrial injuries," "work related injury," or "payment for on-the-job injuries."

Next we consider the constitutional validity of section 5432 with respect to the "burden" of placing a disclosure notice in a yellow pages advertisement. While the statute places no limits upon what the advertisement may say, it does require the addition of a qualifying statement which implicates First Amendment rights. The First Amendment of the United States Constitution provides: "Congress shall make no law . . . abridging the freedom of speech. . . ." This restriction against the exercise of federal power is applicable to state and local governments by virtue of the due process clause of the Fourteenth Amendment. (See *Hazelwood School District* v. *Kuhlmeier* (1987) 484 U.S. 260, 266; 77 Ops.Cal.Atty.Gen. 56, 57-58 (1994).)

Similar to the federal Constitution, subdivision (a) of section 2 of article of the California Constitution states: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." The California Constitution has been construed as being more protective of First Amendment rights than the federal Constitution. (*Spiritual Psychic Science Church* v. *Azusa* (1985) 39 Cal.3d 501, 519; *Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899, 903, 907-910; *Wilson* v. *Superior Court* (1975) 13 Cal.3d 652, 658; *Women's Internat. League Etc. Freedom* v. *City of Fresno* (1986) 186 Cal.App.3d 30, 37-38.) Nevertheless, we believe that an examination of the constitutional issues to be resolved herein requires similar treatment under the two constitutions (see *California Teachers Assn* v. *Governing Board* (1996) 45 Cal.App.4th 1383, 1391-1392; *Savage Lab Conversion Project* v. *Lawrence Livermore Laboratory* (1984) 154 Cal.App.3d 1157, 1164-1165; 75 Ops.Cal.Atty.Gen. 232, 238 (1991)), and thus we will rely upon both federal and California cases in our analysis of section 5432. In so doing, we will follow the admonition to "adopt an interpretation that, consistent with the statutory language and purpose, eliminates doubts as to the provision's constitutionality." (*In re Kay* (1970) 1 Cal.3d 930, 942; accord, *People* v. *Davis* (1981) 29 Cal.3d 814, 829; see *People* v. *Milano* (1979) 89 Cal.App.3d 153, 163.)

In 1976 the United States Supreme Court held that the First Amendment precludes government regulation of certain forms of commercial speech. (*Virginia Pharmacy Board* v. *Virginia Citizens Consumer Council, Inc.* (1976) 425 U.S. 748.) Since that time the court has specifically addressed the validity of government restraints that have been placed upon attorney advertisements in various circumstances. (See *In re R.M.J.*, *supra*, 455 U.S. 191; *Ohralik* v. *Ohio State Bar Assn.*, *supra*, 436 U.S. 447; *Bates* v. *State Bar of Arizona*, *supra*, 433 U.S. 350.) Advertising by attorneys is not only permissible, but the right to list one's certifications and area of specialty has been explicitly recognized. (*Peel* v. *Attorney Disciplinary Commission of Illinois* (1990) 496 U.S. 91.) Thus the yellow pages advertisements in question, including references to practicing in the field of workers' compensation, constitute a form of speech protected by the First Amendment.

Since section 5432 does not prohibit an attorney's advertisement, we must examine the difference between a restraint on commercial speech and a disclosure requirement. In *Zauderer* v. *Office of Disciplinary Counsel* (1985) 471 U.S. 626, an attorney advertised that he would represent clients on a contingent-fee basis, but failed to disclose, as required by the State of Ohio, the clients' potential liability for costs if their lawsuits were unsuccessful. The court analyzed the issue as follows:

"Appellant contends that assessing the validity of the Ohio Supreme Court's decision to discipline him for his failure to include in the Dalkon Shield advertisement the information that clients might be liable for significant litigation costs even if their lawsuits were unsuccessful entails precisely the same inquiry as determining the validity of the restrictions on advertising content. . . . In other words, he suggests that the State must establish either that the advertisement, absent the required disclosure, would be false or deceptive or that the disclosure requirement serves some substantial governmental interest other than preventing deception; moreover, he contends that the State must establish that the disclosure requirement directly advances the relevant governmental interest and that it constitutes the least restrictive means of doing so. . . .

"Appellant, however, overlooks material differences between disclosure requirements and outright prohibitions on speech. In requiring attorneys who advertise their willingness to represent clients on a contingent-fee basis to state that the client may have to bear certain expenses even if he loses, Ohio has not attempted to prevent attorneys from conveying information to the public; it has only required them to provide somewhat more information than they might otherwise be inclined to present. . . .

". . . Because the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides, [citation], appellant's constitutionally protected interest in *not* providing any particular factual information in his advertising is minimal. Thus, in virtually all our commercial speech decisions to date, we have emphasized that because disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech, `warning[s] or disclaimer[s] might be appropriately required . . . in order to dissipate the possibility of consumer confusion or deception.' [Citations.]

"We do not suggest that disclosure requirements do not implicate the advertiser's First Amendment right at all. We recognize that unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech. But we hold that an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." (*Id*., at pp. 650-651, fn. omitted.) The court further explained:

"We reject appellant's contention that we should subject disclosure requirements to a strict `least restrictive means' analysis under which they must be struck down if there are other means by which the State's purposes may be served. Although we have subjected outright prohibitions on speech to such analysis, all our discussions of restraints on commercial speech have recommended disclosure requirements as one of the acceptable less restrictive alternatives to actual suppression of speech. [Citation.] Because the First Amendment interests implicated by disclosure requirements are substantially weaker than those at stake when speech is actually suppressed, we do not think it appropriate to strike down such requirements merely because other possible means by which the State might achieve its purposes can be hypothesized. Similarly, we are unpersuaded by appellant's argument that a disclosure requirement is subject to attack if it is `under-inclusive' -- that is, if it does not get at all facets of the problem it is designed to ameliorate. As a general matter, governments are entitled to attack problems piecemeal, save where their policies implicate rights so fundamental that strict scrutiny must be applied. [Citation.] The right of a commercial speaker not to divulge accurate information regarding his services is not such a fundamental right." (*Id*., at pp. 651-652, fn. 14.)

In the present instance the Legislature has attempted, through the Act's requirements, to deter the filing of fraudulent workers' compensation claims. There can be little doubt as to the

substantial interest of the state in deterring false claims, which increase insurance costs and adversely affect the entire workers' compensation system to the detriment of workers, employers, insurance companies, and taxpayers. The Legislature has determined that in the absence of a disclosure notice required by section 5432, advertising would not ". . . assure truthful and adequate disclosure of all material and relevant information." (§ 5431.) Even though other means may accomplish the goal of deterring false claims and disclosing the criminal penalties for such claims might not fully address the problem, the disclosure requirement of section 5432 advances the substantial government interest of reducing fraudulent workers' compensation claims. (See *Central Hudson Gas & Electric Co.* v. *Public Service Corp.* (1980) 447 U.S. 557.)

Having determined that the disclosure notice is permissible as a general proposition, we next consider how section 5432 is to be applied to yellow pages advertisements. Attorneys, like other business telephone subscribers, typically receive a "regular listing" in the yellow pages consisting of one or two lines with the name, address, and telephone number. Subscribers may purchase an additional line or lines, which may be used to indicate a specialty, such as workers' compensation. Subscribers may also purchase "space listings" which allow additional text within the column of the listing. In addition to the general listings for attorneys, an "attorney guide" may contain advertisements divided into areas of practice, including workers' compensation law. Finally, subscribers may purchase "display advertising" of various sizes ranging up to a full page.

Bearing in mind these advertisement categories, we return to the language of section 5432, which requires an advertisement "published . . . on any . . . written advertising medium" to include the disclosure notice "at the top or bottom on the front side or surface of the document." In the context of a yellow pages advertisement, what constitutes the "document?" It could be the entire yellow pages directory, the attorney guide portion, the page on which the advertisement is displayed, or the individual advertisement itself, among other possibilities.

We are directed to interpret statutes to "effectuate the underlying legislative intent." (*Moore* v. *California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1012.) Here the purpose of section 5432 is to provide information to the public. That purpose is satisfied by the notice being printed in a location where it will be viewed by members of the public to whom the workers' compensation advertisement is directed. We believe that each page containing a workers' compensation advertisement must contain the required disclosure notice.

Placing the notice on each page serves the purpose of providing the required information to potential workers' compensation claimants who are seeking counsel regarding their claims. We believe that one notice may serve all workers' compensation advertisements on the page. Determining the exact placement of the notice with the prescribed size and type would be a matter for the directory publisher and the attorney or attorneys to negotiate, keeping in mind the purposes of the Act.

We do not believe that section 5432, as we have construed its application here, impermissibly burdens protected commercial speech. (See *Zauderer* v. *Office of Disciplinary Counsel, supra,* 471 U.S. at 651.) We are aware that in *Memphis Publishing Co.* v. *Leech* (W.D. Tenn. 1982) 539 F.Supp 495, the court invalidated a requirement that a warning be published in certain liquor advertisements. However, *Leech* involved a statute which required newspapers to publish the warning,

whereas section 5432 places the obligation on the advertiser. Moreover, *Leech* dealt with a more burdensome requirement in terms of the space needed for the compelled disclosure and considered several factors later found inapplicable by the court in *Zauderer* v. *Office of Disciplinary Counsel, supra,* 471 U.S. 626.

We conclude that a telephone directory yellow pages advertisement by an attorney that contains the phrase "workers' compensation" or "industrial injuries" requires the placement of a notice regarding the filing of a false or fraudulent workers' compensation claim on the page where the advertisement is located.

\* \* \* \* \*